JOHN S. BATTENFELD, State Bar No. 119513
MORGAN, LEWIS & BOCKIUS LLP
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA  90071-3132
Tel:      213.612.2500
Fax:      213.612.2501
E-mail:   jbattenfeld@morganlewis.com

ERIC MECKLEY, State Bar No. 168181
KATHRYN M. NAZARIAN, State Bar No. 259392
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA  94105-1126
Tel:  415.442.1000
Fax:  415.442.1001
E-mail:   emeckley@morganlewis.com
E-mail:   knazarian@morganlewis.com

Attorneys for Defendants
CLAIRE'S STORES, INC., CLAIRE'S
BOUTIQUES, INC., CBI DISTRIBUTING
CORPORATION and SHELLEY MUZSEK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MAYRA QUINTANA, ELIZABETH SANCHEZ, individually, and on behalf of other members of the general public similarly situated, and as aggrieved employees,<br><br>Plaintiffs,<br><br>vs.<br><br>CLAIRE'S STORES, INC., a Florida corporation; CBI DISTRIBUTING CORPORATION, a Florida corporation; CLAIRE'S BOUTIQUES, INC., a Colorado corporation, SHELLY MUZECK, an individual; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. CV 13-00368 PSG<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**<br><br>**Date:       April 9, 2013**<br>**Time:       10 a.m.**<br>**Location:   Courtroom 5**<br><br>**Complaint Filed:  December 21, 2012**<br>**Trial Date:        Not Set** |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 23932298.2

DEFS.' OPPOSITION TO MOTION TO REMAND
CASE NO. CV-13-00368 PSG

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ......................................................................................................... 1

II.     THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION UNDER
        THE CLASS ACTION FAIRNESS ACT ("CAFA")........................................................ 2

        A.      Plaintiffs' Claims ............................................................................................... 2

        B.      The Citizenship of the Individual Defendant Muzsek Is Irrelevant For
                CAFA Jurisdiction ............................................................................................. 3

        C.      Defendants Have Provided Uncontroverted Evidence That The Amount In
                Controversy Exceeds The Jurisdictional Minimum............................................ 4

                1.      The Preponderance of the Evidence Standard Should Apply Here ........... 4

                2.      Defendants' Evidence Regarding the Putative Class ................................. 6

                3.      Defendants' Calculations Regarding Potential Damages/Recovery........... 7

        D.      The Waiting Time Penalties Claim Exceeds More Than $1.2 Million.................. 9

        E.      Plaintiffs' Overtime Claim Puts Over $1.5 Million Into Controversy................. 12

        F.      Plaintiffs' Meal and Rest Period Claims Together Place More Than $2
                Million In Controversy...................................................................................... 14

        G.      Plaintiffs' PAGA Claim Places More Than $5.1 Million In Controversy........... 16

                1.      Failure to Pay Overtime Civil Penalty ..................................................... 16

                2.      Failure to Pay Minimum Wage Civil Penalty ........................................... 16

                3.      Failure to Provide Meal and Rest Periods Civil Penalties ....................... 17

                4.      Inaccurate Wage Statements Civil Penalty ............................................. 17

                5.      Failure to Timely Pay Wages .................................................................. 17

        H.      Defendants Properly Included a 25 Percent Attorneys' Fee Recovery in the
                Amount in Controversy...................................................................................... 18

        I.      Defendants Have Shown To A Legal Certainty That The Amount In
                Controversy Exceeds $5 Million......................................................................... 19

III.    THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION
        BECAUSE THERE IS COMPLETE DIVERSITY AND THE AMOUNT IN
        CONTROVERSY EXCEEDS $75,000 ............................................................................ 21

        A.      Plaintiffs' Inclusion of Shelley Muzsek as an Individual Defendant Does
                Not Destroy Complete Diversity of Citizenship .................................................. 21

**TABLE OF CONTENTS**
(continued)

Page

1.  Muzsek Cannot Be Held Liable Under Labor Code § 558 and Thus Is a Sham Defendant ................................................................. 21

2.  Even Assuming Muzsek Theoretically Could Be Held Liable Under § 558, The Complaint Does Not Allege Substantive Facts To Support Liability Pursuant to the Applicable Pleading Standard ............. 23

B.  The Requisite Amount in Controversy for Traditional Diversity of Citizenship Exists Based Upon Plaintiffs' PAGA Penalties Claim ..................... 24

IV.  CONCLUSION ........................................................................................ 25

DEFS.' OPPOSITION TO MOTION TO REMAND
CASE NO. CV-13-00368 PSG

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

CASES

4

*Alexander v. FedEx Ground Package System, Inc.*,
   2005 WL 701601 (N.D. Cal. Mar. 25, 2005) ........................................................................ 19

5

*Bolton v. U.S. Nursing Corp.*,
6   2012 WL 5269738 (N.D. Cal. Oct. 23, 2012) ......................................................................... 8

7

*Brady v. Mercedes-Benz USA, Inc.*,
   243 F. Supp. 2d 1004 (N.D. Cal. 2002) ................................................................................ 18

8

*Brinker Restaurant v. Superior Court*,
9   53 Cal.4th 1004 (2012) ........................................................................................................ 15

10

*Brown v. Allstate Ins. Co.*,
   17 F.Supp.2d 1134 (S.D. Cal. 1998) .................................................................................... 24

11

*Caliber Bodyworks, Inc. v. Superior Ct.*,
12   134 Cal. App. 4th 365 (2005) ............................................................................................... 22

13

*Celestino v. Renal Advantage, Inc.*,
   2007 WL 1223699 (N.D. Cal. Apr. 24, 2007) ...................................................................... 19

14

*Chambers v. Penske Truck Leasing Corp.*,
15   2011 WL 1459155 (E.D. Cal. Apr. 15, 2011) ...................................................................... 19

16

*Cifuentes v. Red Robin Int'l, Inc.*,
   No. C-11-5635-EMC, 2012 U.S. Dist. LEXIS 27211 (C.D. Cal. Mar. 1, 2012) ............. 11, 20

17

*Cox v. Allstate Ins. Co.*,
18   No. CIV-07-1449-L, 2008 WL 2167027 (W.D. Okla. May 22, 2008) .......................... 6, 7, 20

19

*Davies v. Godiva Chocolatier, Inc.*,
   No. 10-1014 AHM, 2010 U.S. Dist. LEXIS 81455 (C.D. Cal. Apr. 16, 2010) .................... 14

20

*Fletcher v. Toro Co.*,
21   2009 U.S. Dist. LEXIS 126693 (S.D. Cal. Feb 3, 2009) ..................................................... 20

22

*Franco v. Athens Disposal Co.*,
   171 Cal. App. 4th 1277 (2009) ............................................................................................. 22

23

*Garcia v. Roadlink USA Pac., LLC*,
24   No. SACV 11-0445, 2011 U.S. Dist. LEXIS 60903 (C.D. Cal. June 7, 2011) .................... 20

25

*Giannini v. Northwestern Mut. Life Ins. Co.*,
   2012 WL 1535196 (N.D. Cal. Apr. 30, 2012) ..................................................................... 19

26

*Guglielmino v. McKee Foods Corp.*,
27   506 F.3d 696 (9th Cir. 2007) ................................................................................................ 19

28

**TABLE OF AUTHORITIES**
(continued)

Page

*Helm v. Alderwoods Group, Inc.*,
  696 F. Supp. 2d 1057 (N.D. Cal. 2009) ................................................................. 22

*Hernandez v. Towne Park, Ltd., et al.*,
  2012 U.S. Dist. LEXIS 86975 (C.D. Cal. June 22, 2012).................................... 13, 14, 18, 20

*Jasso v. Money Mart Express, Inc.*,
  2012 WL 699465 (N.D. Cal. Mar. 1, 2012)........................................................... 8

*Jimerson v. Genco Distribution Sys., Inc.*,
  No. C 11-05157SBA, 2012 U.S. Dist. LEXIS 149489 (N.D. Cal. Sept. 28, 2012)......... 12, 20

*Jones v. ADT Security Svcs.*,
  No. 11-7750-PSG, 2012 U.S. Dist. LEXIS 558 (C.D. Cal. Jan. 3, 2012).............................. 20

*Korn v. Polo Ralph Lauren*,
  536 F. Supp. 2d 1199 (E.D. Cal. 2008) ............................................................... 7, 8

*Lopez v. Source Interlink Co., Inc.*,
  No. 2:12-CV-00003-JAM-CKD, 2012 U.S. Dist. LEXIS 44288 (E.D. Cal. Mar. 29,
  2012) ......................................................................................................................... 20

*Lowdermilk v. United States Bank Nat'l Assoc.*,
  479 F.3d 994 (9th Cir. 2007).................................................................................... 4, 6, 7

*Maddox v. Cont'l Cas. Co.*,
  No. 11-00967-RGK, 2011 U.S. Dist. LEXIS 20995 (C.D. Cal. Feb. 10, 2011)..................... 14

*Martinez v. Antique & Salvage Liquidators, Inc.*,
  No. C09-00997, 2011 U.S. Dist. LEXIS 19198 (N.D. Cal. February 25, 2011) ................... 22

*Martinez v. Combs*,
  49 Cal.4th 35 (2010) ................................................................................................ 22

*McCabe v. General Foods Corp.*,
  811 F.2d 1336 (9th Cir. 1987).................................................................................... 24

*Montalvo v. Swift Transp. Corp.*,
  No. 11-cv-1827, 2011 U.S. Dist. LEXIS 145803 (S.D. Cal. Dec. 19, 2011)........................ 20

*Morris v. Princess Cruises, Inc.*,
  236 F.3d 1061 (9th Cir. 2001).................................................................................... 21

*Muniz v. Pilot Travel Centers LLC*,
  No. CIV S-07-0325 FCD EFB, 2007 WL 1302504 (E.D. Cal. May 1, 2007)....................... 15

*Nelson v. BIC USA, Inc.*,
  No. 07-CV-2367-LAB-RBB, 2008 WL 906049 (S.D. Cal. April 1, 2008) ..................... 5, 6, 7

*Ochoa-Hernandez v. Cjaders Foods, Inc.*,
  No. C 08-02073 MHP, 2009 U.S. Dist. LEXIS 42481 (N.D. Cal. May 18, 2009)................ 23

iv

**TABLE OF AUTHORITIES**
(continued)

Page

*Ontiveros v. Zamora,*
No. CIV. S-08-567, 2009 U.S. Dist. LEXIS 13073 (E.D. Cal. February 20, 2009) .............. 23

*Pereira v. Gate Gourmet, Inc.,*
No. 08-07469 MMM, 2009 U.S. Dist. LEXIS 41330 (C.D. Cal. Apr. 30, 2009) .................. 11

*Pulera v. F & B, Inc.,*
2008 WL 3863489 (E.D. Cal. Aug. 19, 2008) ...................................................................... 18

*Ramirez v. HMS Host USA, Inc.,*
No. 5:12-CV-04683-EJD, 2012 U.S. Dist. LEXIS 170676 (N.D. Cal. Nov. 30, 2012) ... 20, 23

*Ray v. Wells Fargo Bank, N.A.,*
No. CV-11-01477-AHM-JCx, 2011 WL 1790123 (C.D. Cal. May 9, 2011) ..................... 4, 6

*Reynolds v. Bement,*
36 Cal. 4th 1075 (2005) overruled on other grounds ........................................................... 22

*Richardson v. Servicemaster Global Holdings Inc.,*
2009 WL 4981149 (N.D. Cal. Dec. 15, 2009) ...................................................................... 19

*Riddoch v. McCormick & Schmicks Seafood Rest., Inc.,*
No. 09-CV-07127, 2010 U.S. Dist. LEXIS 65799 (C.D. Cal. Jun 28, 2010) ....................... 20

*Ritchey v. Upjohn Drug Co.,*
139 F.3d 1313 (9th Cir. 1998) ............................................................................................... 21

*Ruiz v. Paladin Group, Inc.,*
2003 WL 22992077 (C.D. Cal. Sept. 29, 2003) .................................................................... 21

*Schuyler v. Morton's of Chicago, Inc.,*
No. 10-CV-06762-ODW-JCGx, 2011 WL 280993 (C.D. Cal. Jan 25, 2011) ............. 8, 10, 11

*Simmons v. PCR Technology,*
209 F. Supp. 2d 1029 (N.D. Cal. 2002) ............................................................................... 19

*Singer v. State Farm Mut. Ins. Co.,*
116 F.3d 373 (9th Cir. 1997) ................................................................................................... 1

*Thomas v. Aetna Health of California, Inc.,*
2011 WL 2173715 (E.D. Cal. June 2, 2011) ............................................................. 18, 24, 25

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.,*
602 F.3d 1087 (9th Cir. 2010) ................................................................................................. 3

*Urbino v. Orkin Servs. of Cal., Inc.,*
882 F.Supp.2d 1152 (C.D. Cal. Oct. 5, 2011) ............................................................... 18, 25

*Valdez v. Allstate Ins. Co.,*
372 F.3d 1115 (9th Cir. 2004) ................................................................................................. 1

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Velazquez v. HMS Host USA, Inc.,*
    2012 U.S. Dist. LEXIS 172801 (E.D. Cal. Dec. 4, 2012) ..................................................... 23

*Vigil v. HMS Host*,
    2012 U.S. Dist. LEXIS 112928 (N.D. Cal. Aug. 10, 2012), at *17 ........................... 11, 14, 23

STATUTES

28 U.S.C.
    § 1332(a) ...................................................................................................................... 25
    § 1332(d)(2) ................................................................................................................... 3

Bus. & Profs. Code
    §§ 17200, *et seq.* ......................................................................................................... 3, 5

Cal. Civ. Code
    § 1747.08 ........................................................................................................................ 7

CLASS ACTION FAIRNESS ACT ("cafa") ........................................................................ passim

Lab. Code
    § 201 ......................................................................................................................... 3, 10
    § 202 ......................................................................................................................... 3, 10
    § 203 ............................................................................................................................. 10
    § 204 ....................................................................................................................... 17, 18
    § 210 ............................................................................................................................. 18
    § 226(a) ................................................................................................................... 3, 17
    § 226.5 ............................................................................................................................. 3
    § 226.7 ...................................................................................................................... 2, 17
    § 226.7(b) ..................................................................................................................... 15
    § 510 ....................................................................................................................... 2, 3, 16
    § 512(a) .................................................................................................................. 2, 3, 17
    § 558 ........................................................................................................................ passim
    § 1194 ..................................................................................................................... 2, 3, 16
    § 1197 ..................................................................................................................... 2, 3, 16
    § 1197.1 .................................................................................................................. 2, 3, 16
    § 1198 ..................................................................................................................... 2, 3, 16
    §§ 2698, *et seq.* (the Private Attorneys General Act of 2004 or the "PAGA") ..................... 3
    § 2699 ........................................................................................................................... 22
    § 2800 ............................................................................................................................. 3
    § 2802 ............................................................................................................................. 3

RULES AND REGULATIONS

Fed. R. Civ. P. 23 ..................................................................................................................... 5

OTHER AUTHORITIES

Webster's Third New International Dictionary ........................................................................ 15

1

## I.    **INTRODUCTION**

2      In their Notice of Removal, Defendants Claire's Boutiques, Inc. ("Claire's"), Claire's

3   Stores, Inc., CBI Distributing Corporation, and Shelley Muzsek (erroneously named "Shelly

4   Muzeck") (together as "Defendants") met their burden of demonstrating that federal court

5   jurisdiction is proper under both traditional diversity of citizenship, which requires a threshold of

6   only $75,000 in controversy, and the Class Action Fairness Act (the "CAFA"), which requires a

7   threshold of $5 million in controversy.  Relying upon the allegations of the Complaint and

8   evidence regarding the putative class, Defendants established to a legal certainty that the amount

9   in controversy exceeds $11 million.

10      In their Motion for Remand Plaintiffs Mayra Quintana and Elizabeth Sanchez

11   (collectively, "Plaintiffs") ignore the plain language contained in their Complaint, fail to dispute

12   any of the evidence presented by Defendants, and argue that: (1) Defendants used speculative and

13   uncertain damage estimates and therefore the $5 million CAFA threshold was not proven to "a

14   legal certainty"; and (2) because Plaintiffs named Claire's district manager Shelley Muzsek is an

15   individual defendant, complete diversity is lacking for traditional diversity removal.

16      Each of these arguments is without merit.  First, Defendants supported the amount in

17   controversy calculations with the summary judgment-type evidence required by the applicable

18   Ninth Circuit precedent.  *See Valdez v. Allstate Ins. Co.,* 372 F.3d 1115, 1117 (9th Cir. 2004);

19   *Singer v. State Farm Mut. Ins. Co.*, 116 F.3d 373, 374 (9th Cir. 1997) (declarations submitted

20   were sufficient to establish amount in controversy).  Specifically, Defendants filed a declaration

21   from Claire's Director of Payroll Services, Donna Talenco ("Talenco Decl."), attesting to the

22   *minimum* number of individuals who make up the putative class as well as the *minimum* number

23   of the sub-class of individuals who could recover damages.  Based on these undisputed minimum

24   class sizes, Defendants relied upon Plaintiff's own allegations regarding the sought-after recovery

25   and rate of violations to calculate more than (1) at least $1,271,836 in waiting time penalties

26   alone; (2) $1,568,000 in alleged unpaid overtime pay; (3) $2,091,000 for alleged unpaid meal and

27   rest period premium pay; (4) $5,120,000 in penalties under the Private Attorneys' General Act

28   ("PAGA"); and (5) $2,297,183 in attorneys' fees.  While Plaintiffs repeatedly accuse Defendants

1   of merely speculating as to the basis for their assertion that the amount in controversy exceeds the

2   jurisdictional minimum, Plaintiffs ignore the plain meaning of their own allegations.  Indeed, the

3   only "assumption" Defendants have made is that the allegations in Plaintiffs' Complaint correctly

4   describe Plaintiffs' factual and legal contentions as to liability.  Plaintiffs' Motion fails to

5   demonstrate that Defendants' calculations were either not justified given the allegations in the

6   Complaint or not sufficiently certain under the applicable legal standard.

7        Second, with respect to the amount in controversy for traditional diversity of citizenship,

8   Defendants have established to an absolute certainty that the amount in controversy far exceeds

9   $75,000 because the total value of Plaintiffs' PAGA penalty claim alone far exceeds this amount

10  and because the value of the PAGA claim may be aggregated and attributed to Plaintiffs for the

11  purpose of assessing whether this threshold is met.  Individual defendant Ms. Muzsek is an

12  improper sham defendant and is not subject to liability with respect to any of the claims alleged

13  against her.  Therefore, complete diversity exists.

14       Defendants have demonstrated that this Court has original jurisdiction over Plaintiffs'

15  claims, and the Motion to Remand should be denied.

16  **II.    THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION UNDER**
17  **        THE CLASS ACTION FAIRNESS ACT ("CAFA")**

         **A.    Plaintiffs' Claims**
18

19       Plaintiff Mayra Quintana was employed as an "assistant manager" in Claire's Santa Clara,

20  California retail location, for approximately nine months.  Complaint ("Compl.") ¶ 27.  Plaintiff

21  Elizabeth Sanchez was employed as a "store manager" in Claire's Santa Clara and Capitola,

22  California retail locations, for approximately one and one-half (1 ½ ) years.  Compl. ¶ 28.

23       Plaintiffs filed a purported class action complaint claiming, on behalf of Plaintiffs and all

24  non-exempt or hourly paid assistant managers and/or store managers who worked for Claire's in

25  California at any time from December 21, 2008, through the date of class certification, violations

26  of the following: (1) Labor Code §§ 510 and 1198 (unpaid overtime) (*see* Compl. ¶¶ 40-47); (2)

27  Labor Code §§ 1194, 1197, and 1197.1 (unpaid minimum wages) (*see* Compl. ¶¶ 48-52); (3)

28  Labor Code §§ 226.7 and 512(a) (meal breaks) (*see* Compl. ¶¶ 53-60); (4) Labor Code § 226.7

(rest breaks) (*see* Compl. ¶¶ 61-68); (5) Labor Code §§ 201 and 202 (untimely payment of final wages) (*see* Compl. ¶¶ 69-75); (6) Labor Code §§ 2800 and 2802 (unpaid business expenses) (*see* Compl. ¶¶ 76-80); (7) Labor Code §§ 2698, *et seq*. (the Private Attorneys General Act of 2004 or the "PAGA") (*see* Compl. ¶¶ 82-89).  Plaintiffs also asserted a claim under Business and Professions Code §§ 17200, *et seq*. (unfair competition) (*see* Compl. ¶¶ 90-95).

In addition to pursuing a class action, Plaintiffs have sought to maintain a representative action on for penalties under the PAGA on behalf of all "aggrieved employees" based on alleged violations of each of the following Labor Code sections:  (i) Labor Code §§ 510 and 1198 (overtime wages); (ii) Labor Code §§ 1194, 1197, and 1197.1 (minimum wage); (iii) Labor Code §§ 226.5 and 512(a) (meal and rest breaks); (iv) Labor Code §§ 2800 and 2802 (business expense reimbursement); (v) Labor Code § 226(a) (accurate wage statements); (vi) Labor Code §§ 201, 202, 203, 204 (timing of final wages).  Compl. ¶¶ 81-89.

**B.**     **The Citizenship of the Individual Defendant Muzsek Is Irrelevant For CAFA Jurisdiction**

Although Defendants maintain that individual defendant Ms. Muzsek is an improper sham defendant as discussed herein, in any event the citizenship of Ms. Muzsek is irrelevant for purposes of CAFA jurisdiction.  Here, Defendants satisfy CAFA's minimal diversity requirement because they show that one putative class member is a citizen of a state different from that of one defendant.  28 U.S.C. § 1332(d)(2); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1091-91 (9th Cir. 2010).  Plaintiffs do not dispute that they are citizens of California or that Defendant Claire's Boutiques, Inc. ("Claire's") is a citizen of the States of Colorado and Illinois for the purposes of determining diversity.  *See* Dkt. No. 2, Talenco Decl., ¶2.

/ / /

/ / /

/ / /

/ / /

DEFS.' OPPOSITION TO MOTION TO REMAND
CASE NO. CV-13-00368 PSG

**C.**     **Defendants Have Provided Uncontroverted Evidence That The Amount In Controversy Exceeds The Jurisdictional Minimum**

1.     **The Preponderance of the Evidence Standard Should Apply Here**

Plaintiffs argue that under *Lowdermilk v. United States Bank Nat'l Assoc.*, 479 F.3d 994 (9th Cir. 2007), the "legal certainty" standard should automatically apply because the Complaint recites that the amount in controversy is less than $5 million and/or $75,000.  Motion, 5:15-28.  Jurisdiction has never been decided by magic words, however, and even *Lowdermilk* holds that a court must look to "all four corners of the complaint to determine if CAFA jurisdiction is met." *Lowdermilk*, 479 F.3d at 998.  Accordingly, a disclaimer as to the jurisdictional minimum does not warrant application of the legal certainty standard if the complaint elsewhere contradicts, or makes ambiguous, the amount in controversy.  Defendants contend that ambiguities in the Complaint warrant application of the preponderance of the evidence standard here.  "When it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional amount." *Ray v. Wells Fargo Bank, N.A.*, No. CV-11-01477-AHM-JCx, 2011 WL 1790123 at *2 (C.D. Cal. May 9, 2011) (internal quotations omitted).  As the court held in *Ray*, a complaint can be unclear as to the amount in controversy even where, as is the case here, the complaint purports to expressly disclaim the jurisdictional minimum.  In *Ray*, the preponderance of the evidence standard was used *despite the disclaimer in the complaint* as to the jurisdictional minimum because the disclaimer did not clearly include the *value of the injunctive relief* that was sought in the prayer for relief.  *Ray*, 2011 WL 1790123 at *4-5 (emphasis added).  The court found that plaintiff's complaint sought recovery that "does not fit comfortably within the realm" of the stated amount in controversy and declined to apply the legal certainty standard.  *Id.*

Here, Plaintiffs' Complaint contains such ambiguities.  Plaintiffs allege that the "amount in controversy for the *proposed class action*, including monetary damages, restitution, penalties, injunctive relief, and attorney's fees, is less than five million dollars ($5,000,000)."  Compl. ¶ 1 (emphasis added).  Plaintiffs have alleged, however, that their PAGA claim *is not a class action*,

1    but rather is a representative action that is not subject to the class action requirements of Rule 23.

2    Thus, the value of the PAGA claim is not covered by this disclaimer.  In addition, Plaintiffs'

3    allegations about the amount in controversy, both in the body of the Complaint and in the Prayer,

4    fail to account for and include the cost associated with the "appointment of a receiver to receive,

5    manage and distribute any and all funds disgorged from Defendants and determined to have been

6    wrongfully acquired by Defendants as a result of violations of California Business & Professions

7    Code Sections 17200 *et seq.*"  Prayer for Relief ¶ 43.  Plaintiffs' disclaimer regarding the amount

8    in controversy does not include the value of the "*other and further relief as the Court may deem*

9    *equitable and appropriate*" that Plaintiffs seek.  Prayer for Relief ¶¶ 9, 15, 21, 27, 32, 37, 40, and

10   45 (emphasis added).

11        Plaintiffs also follow their supposed disclaimer as to the jurisdictional amount with their

12   statement in Paragraph 1 of the Complaint that they expressly "reserve the right to seek a larger

13   amount based upon new and different information resulting from investigation and discovery."

14   Similarly, in the Prayer for Relief, Plaintiffs purport to add the value of injunctive relief into a

15   similar disclaimer (Prayer for Relief ¶ 1), but then expressly "reserve the right to seek a larger

16   amount based upon new and different information resulting from investigation and discovery."

17   Compl. ¶1.  These caveats completely undercut and negate any purported disclaimer and, at a

18   minimum, render it ambiguous.  A plaintiff cannot plead an artificial cap to the amount in

19   controversy, while expressly leaving room for an award exceeding this cap by an indeterminate

20   amount, as Plaintiffs have attempted to do here.  *Nelson v. BIC USA, Inc.*, No. 07-CV-2367-LAB-

21   RBB, 2008 WL 906049, *4 (S.D. Cal. April 1, 2008).  In *Nelson*, the "Complaint expressly

22   attempt[ed] to avoid CAFA removal" by pleading that "the total amount in controversy as to all

23   putative class members, 'inclusive of attorneys' fees and costs, and injunctive relief . . . does not

24   exceed $4,999,000.'"  *Id.* at *1, 4.  After the defendant provided a sworn declaration estimating

25   the putative class size, the court found that the resulting calculation of damages was "not co-

26   extensive" with the stated ceiling on the "amount in controversy."  *Id.* at *4.  The court reached

27   the jurisdictional minimum relying "on that calculation alone and without reaching the value of

28   Plaintiff's additional equitable claims for restitution, disgorgement of profits, injunctive, and

other relief." *Id.* The court rejected the plaintiff's objections to defendant's declaration and found that *Lowdermilk* permits a court to "look[] beyond the four corners of the complaint for purposes of deciding jurisdiction." *Id.* Because of the above-described ambiguities, the Court should apply the preponderance of the evidence standard here, not the legal certainty standard. *Ray*, 2011 WL 1790123 at *2.

### 2. Defendants' Evidence Regarding the Putative Class

Plaintiffs argue that Defendants failed to put forth summary judgment-like evidence. This is not true. Claire's Director of Payroll Services, Donna Talenco, submitted a declaration under penalty of perjury confirming that Claire's employed approximately 968 assistant manager and/or store managers in California from December 21, 2008 (the start of the class period defined in the Complaint). *See* Talenco Decl., ¶ 6. Talenco further established that approximately 454 of these putative class members separated from employment within the three years prior to Plaintiffs filing the Complaint and the average hourly wage for the 454 individuals who have separated from their employment since December 21, 2009 is $13.34. *Id.* at ¶ 6. Ms. Talenco also established through her declaration that there have been approximately 11,379 paychecks issued to assistant managers and/or store managers in California from December 21, 2011 through January 15, 2013. In a declaration submitted with this Opposition, Claire's Senior Vice President of Store Operations, Colleen Collins, established that store managers and some assistant store managers in California are, and during the relevant time period have been, regularly scheduled to work eight (8) hour days. *See* Declaration of Colleen Collins in support of Opposition to Motion to Remand ("Collins Decl."), ¶ 2. Moreover, the time records of the two named plaintiffs demonstrate that they worked 7.66 hours per day on average. Collins Decl., ¶¶ 4-5. These numbers are not speculative, but are entirely concrete.

Significantly, Plaintiffs do not dispute any of this evidence or make any evidentiary objections to the Talenco Declaration. It is well-settled that a defendant can establish the jurisdictional amount to a legal certainty where, as here, Plaintiffs do not dispute the evidence offered by Defendants. For example, in *Cox v. Allstate Ins. Co.*, No. CIV-07-1449-L, 2008 WL 2167027 (W.D. Okla. May 22, 2008), defendants submitted evidence of the amount in

DEFS.' OPPOSITION TO MOTION TO REMAND
CASE NO. CV-13-00368 PSG

1    controversy under CAFA, which plaintiffs did not dispute.  The *Cox* court ruled that, even under

2    the heightened legal certainty test, defendants had met their burden.  *Id.* at *2 ("Under the legal

3    certainty standard . . . [g]iven the nature of plaintiffs' claims and the uncontroverted evidence

4    presented by defendants, the court finds they have met their burden"); *see also Nelson v. BIC*

5    *USA, Inc.*, No. 07-CV-2367-LAB-RBB, 2008 WL 906049 at *4 (S.D. Cal. Apr. 1, 2008)

6    (evidence of the estimated number of putative class members multiplied by maximum claim per

7    putative class member satisfies the legal certainty standard).

8              3.       **Defendants' Calculations Regarding Potential Damages/Recovery**

9          Plaintiffs argue that Defendants cannot make *any* assumptions in calculating the

10   jurisdictional amount.  In essence, Plaintiffs assert that, contrary to the policy underlying the

11   CAFA, the only way Defendants could satisfy the "legal certainty" standard would be to prove

12   damages for each individual putative class member on a person-by-person basis.  This

13   requirement could rarely, if ever, be met and would effectively nullify CAFA's clear language

14   allowing for class actions to be removed if certain criteria are met.  Plaintiffs' contention is also

15   inconsistent with the Ninth Circuit precedent in *Lowdermilk*, which expressly contemplated the

16   use of estimates and assumptions when establishing the amount in controversy to a legal

17   certainty.  479 F.3d at 1001.  Indeed, the Ninth Circuit not only adopted assumptions made by the

18   defendant in *Lowdermilk* when assessing the amount in controversy, but even adopted those

19   assumptions where they were unsupported by any record evidence.  *Id.* at n.7.  The Ninth Circuit

20   thus intended for parties to be able to use such estimates and assumptions in establishing

21   jurisdiction and made clear that the 'legal certainty' standard "*is not insurmountable.*" *Id.* at 1000

22   (emphasis added).

23         Consistent with *Lowdermilk*, a defendant can establish the amount in controversy by

24   presenting evidence of the number of putative class members (as Claire's has done here) and then

25   multiplying this number by the potential violations/damages per claim (as Claire's also has done

26   here).  *See Korn v. Polo Ralph Lauren*, 536 F. Supp. 2d 1199, 1206 (E.D. Cal. 2008).  In *Korn*,

27   plaintiffs brought a class action based on California Civil Code § 1747.08, which carries a

28   maximum civil penalty of $1,000 per claim.  To establish the $5 million amount in controversy

7                                          DEFS.' OPPOSITION TO MOTION TO REMAND
                                               CASE NO. CV-13-00368 PSG

for CAFA jurisdiction, the defendant presented evidence that more than 5,000 potential claims (credit card transactions) took place during the class period. *Id*. at 1206. The district court found that multiplying the number of claims by the maximum statutory penalty – and assuming the maximum penalty was at issue for each class member – was sufficient evidence to prove the amount in controversy under CAFA. *Id*. In addressing the defendant's evidentiary burden, the court held, "defendant need only demonstrate that there are at least 5,001 putative class claims" and denied plaintiff's motion to remand. *Id*.

Here, Plaintiffs cannot ignore their own allegations and assert that Defendants' calculations, which are based on the allegations in the Complaint, are too speculative. On this issue, *Schuyler v. Morton's of Chicago, Inc.*, No. 10-CV-06762-ODW-JCGx, 2011 WL 280993, *5 (C.D. Cal. Jan 25, 2011), is instructive. In *Schuyler*, the plaintiff alleged that he "was required to work in excess of eight hours per day" and was owed overtime while "expressly stat[ing] that the amount in controversy is less than the jurisdictional minimum". *Id*. at *2-3. The court held that "[r]egardless of the requisite burden of proof, … Defendants satisf[ied] whichever standard that may apply" because the allegations in the Complaint, together with the declaration supplying the data regarding the putative class members, fully supported the calculations submitted by the defendant. *Id*. at *3. Similarly, in *Jasso v. Money Mart Express, Inc*., 2012 WL 699465, *5 (N.D. Cal. Mar. 1, 2012), this Court found that the defendant made "reasonable and conservative estimates" of the amounts at issue based upon the complaint allegations: "Given the allegations of a 'uniform policy and scheme' and that the violations took place 'at all material times,' one violation per week on each claimed basis is a sensible reading of the alleged amount in controversy, as pleaded by Plaintiff." Just as in *Schuyler* and *Jasso*, Defendants' removal petition here is expressly based on Plaintiffs' own allegations, together with employee data authenticated by Claire's. *See also, Bolton v. U.S. Nursing Corp*., 2012 WL 5269738, *7-*8 (N.D. Cal. Oct. 23, 2012) (finding that the defendant appropriately relied on the allegations in the complaint to establish to a legal certainty that the amount in controversy exceeded $5 million).

### D.    The Waiting Time Penalties Claim Exceeds More Than $1.2 Million

Plaintiffs' Fifth Cause of Action seeks waiting time penalties equal to the daily wages for each former employee up to a 30-day maximum.  Compl. ¶ 75.  Plaintiffs argue that (1) not every former employee during the proposed class period will be a class member; and (2) Claire's assumes a "maximum violation rate."

First, Plaintiffs defined the class to include "***All persons*** employed by Defendants as hourly-paid, non-exempt assistant managers and/or store managers in a California retail store within four years prior to the filing of this complaint until the date of certification."  Compl. ¶ 20 (emphasis added).  The Complaint also alleges that ***all*** putative class members were owed wages by Claire's:  "Plaintiffs and class members did not receive payment of all wages, including, but not limited to, overtime wages, minimum wages, reporting time pay, and meal and rest period premium wages, within required time periods."  Compl. ¶¶ 37, 38.  Plaintiffs specifically alleged that "[***d]uring the relevant time period, Defendants wilfully [sic] failed to pay class members who are no longer employed by Defendants the earned and unpaid wages set forth above***, including, but not limited to, overtime wages, minimum wages, reporting time pay, and meal and rest period premium wages, either at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ" (Compl. ¶ 72); and that "***Plaintiffs and class members*** are entitled to recover … [their] statutory penalty wages for each day they were not paid, at their regular hourly rate of pay, up to a thirty (30) day maximum pursuant to California Labor Code section 203." (Compl. ¶ 75).  The Prayer for Relief applies this claim broadly to "***Plaintiffs and other terminated class members***."  Prayer, ¶ 28.

So long as there is *at least one* type of alleged underpayment of final wages that have still not been paid (which Plaintiffs have alleged as to each former putative class member), then the 30-day waiting time penalty may be claimed by each former employee.  Here, the Complaint alleges final wage deficiencies as to the entire former employee putative class, asserting that "during the relevant time period, Defendants willfully failed to pay class members who are no longer employed by Defendants the earned and unpaid wages set forth above . . . [¶]  Plaintiffs and class members are entitled to recover from Defendants the statutory penalty wages for each

day they were not paid, at their regular hourly rate of pay, up to a thirty (30) day maximum pursuant to California Labor Code Section 203." Compl. ¶¶ 72-75.  Thus, according to the Complaint, *every* former employee who separated from employment within the statute of limitations suffered at least one underpayment of wages and would be entitled to these penalties.

Second, Plaintiffs' Complaint places in controversy the *maximum* 30-day penalty as to each former employee because the Complaint alleges that not only were former putative class members paid late, but they *still* have not been paid wages allegedly owed.  *See, e.g.,* Prayer for Relief, ¶ 5 ("Defendants . . . willfully fail[ed] to pay all overtime wages due"); ¶ 10 ("Defendants . . . willfully fail[ed] to pay minimum wages").  Indeed, if Plaintiffs were limiting their lawsuit to a claim that putative class members were only paid late, the Complaint would allege *only* a Section 203 claim.  The fact that Plaintiffs also bring claims for unpaid minimum wages, unpaid overtime, and unpaid meal and rest break premiums confirms that they are alleging that former employees have not only been paid late, but have allegedly still not been paid all wages owed.  Thus, Plaintiffs clearly allege a 100% violation rate for these waiting time penalties.

Defendants presented evidence that about 454 putative class members separated from employment within the three-year statute of limitations prior to the filing of the Complaint.  Talenco Decl. ¶ 6.  These former employees had an hourly rate of pay of approximately $13.34 ($106.72 per day).  *Id*. ¶ 8.  For purposes of calculating § 203 penalties, the amount at issue for each former employee on average is $3,201($106.72 * 30 days).  Under the legal certainty test, the amount in controversy for waiting time penalties on behalf of all former putative class members under California Labor Code Sections 201, 202, and 203 places at issue approximately **$1,453,000** (454 formerly employed putative class members * $3,201 = $1,453,254).  This calculation is not based on improper assumptions, but is based on the hard evidence.

The calculation method used by Defendants directly tracks a method approved by the court in *Schuyler v. Morton's of Chicago, Inc.*, 2011 WL 280993 (C.D. Cal. 2011), in which the court dismissed a plaintiff's claim that a complaint did not expressly allege a 100% violation rate to allow for full 30 days of waiting time penalties.  *Id*. at *5.  The court noted that the complaint alleged defendant willfully failed to pay all wages due and owing at the time of termination, or

DEFS.' OPPOSITION TO MOTION TO REMAND
CASE NO. CV-13-00368 PSG

within seventy-two (72) hours of their resignation (just as Plaintiffs have claimed here). *Id.*
Applying the legal certainty standard, the court held that a calculation including the maximum
waiting time penalties was *not speculative* and was supported by the allegations. *Id.*

Plaintiffs assert that Defendants failed to support the "assumption" that each of the 454
putative class members worked 8 hour days.  Motion, 9:3-5.  Here, store managers and some
assistant store managers in California are, and during the relevant time period have been,
regularly scheduled to work eight (8) hour days.  *See* Collins Decl., ¶ 2.  Those assistant store
managers who were regularly scheduled to work fewer than eight (8) hours in a shift were
regularly scheduled to work at least 30 hours per week.  *Id.* at ¶ 2.  As evidenced by Plaintiffs'
records, Plaintiffs themselves together worked 7.66 hours per day on average.  *Id.*, ¶¶4-5.
Although Defendants maintain that the calculation based on 8 hour days is reasonable given that
Plaintiffs' own average shift length rounds to 8 hour days, even calculating waiting time penalties
using an average of seven (7) hour days ($13.34 per hour * 7 = $93.38 per day), still places at
issue **$1,271,835.60** (454 formerly employed putative class members * $93.38 * 30).

Plaintiffs' reliance on *Cifuentes v. Red Robin Int'l, Inc.*, No. C-11-5635-EMC, 2012 U.S.
Dist. LEXIS 27211 (C.D. Cal. Mar. 1, 2012), is misplaced, as that case dealt in large part with
purely speculative *future* waiting time penalties.  *Id.* at *16.  Here, in contrast, Defendants used
the actual number of employees who terminated from Claire's.  *Vigil v. HMS Host*, 2012 U.S.
Dist. LEXIS 112928 (N.D. Cal. Aug. 10, 2012), at *17 is also distinguishable.  In that case, the
Court found that the defendants did not carry their burden of providing damages with legal
certainty because the defendants did not cite the plaintiff's complaint nor did they otherwise
provide concrete support for assuming the maximum penalty for each class member.  *Id.* at *17.
Unlike in the present case, the defendants in *Vigil* did not support their assumption that the
proposed class members worked an average of eight hours per day.  *Id.*  The case of *Pereira v.
Gate Gourmet, Inc.*, No. 08-07469 MMM, 2009 U.S. Dist. LEXIS 41330, at *15-16 (C.D. Cal.
Apr. 30, 2009) is also distinguishable, because in that case the court found that in light of the
*specific complaint allegation* that the defendant "paid employees who resigned or were
terminated <u>the week following</u> their separation from the company," it appeared that individual

1    class members would be eligible at most for 10 days of statutory penalties under § 203 rather than

2    the claimed maximum of 30 days.  *Id.*  (emphasis added).  Here, Plaintiffs' § 203 claim is pled

3    broadly and does not limit the penalties sought to a period less than 30 days.

4            The decision in *Jimerson v. Genco Distribution Sys., Inc.,* No. C 11-05157 SBA, 2012

5    U.S. Dist. LEXIS 149489, *22-24 (N.D. Cal. Sept. 28, 2012), does not apply here because the

6    defendant in *Jimerson* assumed that every terminated employee during the relevant time period

7    was entitled to waiting time penalties even though the complaint did not allege that every

8    employee terminated during the relevant time period was denied overtime or vacation wages, the

9    two claims at issue.  Rather, the "overtime class" contained only 31 members and the "vacation

10   class" contained only employees that worked more than a year and did not use all of their accrued

11   vacation time within the previous year; thus, the court in *Jimerson* found no evidence to show

12   how many, if any, of these class members were terminated during the relevant time period.  Here,

13   in contrast, the Complaint alleges that *every* former employee who separated from employment

14   within the statutory limitations period suffered at least one underpayment of wages and would be

15   entitled to these waiting time penalties.  Compl. ¶¶ 72-75.

16           **E.      Plaintiffs' Overtime Claim Puts Over $1.5 Million Into Controversy**

17           Plaintiffs argue that Defendants' overtime calculation assumes that every individual

18   worked a full four years and accrued a violation every week.  Motion, 9:23-10:15.  Plaintiffs are

19   simply wrong.  Defendants' calculation of the alleged overtime amount was based on actual

20   weeks of employment for the putative class during the relevant period, and did not assume that

21   anyone, much less everyone, worked a full four years.  Defendants also used the express

22   allegations in the Complaint to conclude that the amount in controversy was at least an average of

23   one hour of unpaid overtime each workweek per putative class member.  This is not an "inflated,

24   unfounded" calculation as Plaintiffs contend (Motion, 10:22), but a conservative estimate of

25   potential overtime *based on Plaintiffs' own allegations*.  Specifically, Plaintiffs allege that (1)

26   "Defendants **systematically** understaffed the retail locations where Plaintiffs and class members

27   worked, *often* with at most two employees, one of which was an associate.  At the same time,

28   Defendants **enforced a practice and/or policy of requiring** that either an assistant manager or

1    store manager be in the store at all times.  As a result, Plaintiffs **often** had to work through their

2    meal breaks while off-the-clock… (Compl., 11:18-23), that they (2) "worked off the clock after

3    their shift was scheduled to end [because]… Defendants had a **policy and/or practice of**

4    **forbidding and/or discouraging** overtime but still required Plaintiffs and class members to

5    complete all required work within their scheduled shifts…" (Compl., 11:24-27), that (3)

6    "[b]ecause **Defendants understaffed the stores**, Plaintiffs and class members **had to clock out**, so

7    as not to incur overtime…" (Compl., 11:27-28), that they (4) "**required** Plaintiffs and class

8    members to take store funds to the bank ('bank drops') after store hours while Plaintiffs and class

9    members were off-the-clock ..." (Compl., 12:1-3), and that they (5) "failed to incorporate [their]

10   non-discretionary bonus wages into the calculation of the regular rate of pay for purposes of

11   calculating the overtime wage rate …" (Compl., 12:7-10).  Compl., ¶ 46 (emphasis added).

12       These specific allegations support using *more than* the claimed overtime damages used in

13   the Notice of Removal.  Defendants took a very conservative approach by using only one (1) hour

14   of unpaid overtime per putative class member, per week.  This conservative calculation yielded in

15   excess of $1,568,000 as an amount in controversy for Plaintiffs' First Cause of Action ($20.37* 1

16   hour/week * 77,023 weeks  = $1,568,958)[1].  Given the allegedly "*systematic*" and "*often*"-

17   occurring violations, a claim of two (2) hours of unpaid overtime per week on behalf of the

18   putative class, would place in controversy for Plaintiffs' First Cause of Action an amount

19   exceeding **$3,137,000** ($20.37* 2 hour/week * 77,023 weeks  = $3,137,917).  Significantly,

20   Plaintiffs do not contend in their Opposition that they are seeking less overtime than as calculated

21   by Defendants, nor do Plaintiffs explain why Defendants' conservative estimates are incorrect

22   given the allegations of the Complaint quoted above.

23       The cases upon which Plaintiffs rely are distinguishable and do not control the outcome in

24   the present case.  For example, in *Hernandez v. Towne Park, Ltd., et al.,* 2012 U.S. Dist. LEXIS

25   86975, at *23 (C.D. Cal. June 22, 2012), the court rejected the defendants' overtime calculation

26   ─────────────

27   [1] During the relevant time period, Claire's employed 968 putative class members who were
     employed approximately 77,023 weeks in the relevant job titles.  *See* Talenco Decl., ¶ 7.  Based
     on the average hourly wage of $13.58, the average hourly overtime rate for these Claire's

28   employees is $20.37.  *Id.* ¶ 8.

DEFS.' OPPOSITION TO MOTION TO REMAND
CASE NO. CV-13-00368 PSG

because the defendants assumed, *without any explanation or citation to the actual allegations in the complaint*, that each class member was entitled to four hours of overtime pay per week and one hour of double overtime pay per week.  Furthermore, the court took issue with the declaration submitted by the defendants because, unlike the Talenco and Collins declarations presented here, it asserted without explanation the "average" length of class members' employment.  *Id.* at *25. The present case is distinguishable from the remaining cases Plaintiffs cite for similar reasons.[2]

**F.      Plaintiffs' Meal and Rest Period Claims Together Place More Than $2 Million In Controversy**

Plaintiffs argue that Defendants based their meal and rest period calculations on "unsupported assumptions that were not mentioned or suggested in Plaintiffs' Complaint." Motion, 11:15-16.  However, Defendants' calculations, which were based upon an *average* of one meal period *or* one rest period violation per employee per week over the four years prior to Plaintiffs filing their Complaint, were derived from Plaintiffs' own allegations.  For example, in support of their claim for meal premiums Plaintiffs specifically pled that:

> Defendants had a ***policy and/or practice of failing to adequately staff their stores, and further discouraged*** Plaintiffs and class members from recovering overtime wages while at the same time requiring them to complete all of their duties within their scheduled shifts.  As a result, Plaintiffs and class members ***often*** worked through meal breaks in order to complete their work.  Moreover, Defendants ***often*** would only schedule one manager or assistant manager to work in the store at any given time, and ***required*** at least one manager or assistant manager to be present and working in the store ***at all times***.  As a result, Plaintiffs and class members ***often*** had to forgo their meal periods, take them late, or take them after having worked five hours or more ….

---

[2] *See Vigil v. HMS Host*, 2012 U.S. Dist. LEXIS 112928, *14-16 (N.D. Cal. Aug. 10, 2012) (finding defendants did not cite any allegations or evidence to support the assumptions that each class member worked one hour of overtime per week and that each class member worked for an average of two years); *see also Maddox v. Cont'l Cas. Co.*, No. 11-00967-RGK, 2011 U.S. Dist. LEXIS 20995 (C.D. Cal. Feb. 10, 2011) (defendant assumed at least 10 hours of overtime per week without any support); *Davies v. Godiva Chocolatier, Inc.*, No. 10-1014 AHM, 2010 U.S. Dist. LEXIS 81455, *11 (C.D. Cal. Apr. 16, 2010) (defendant speculated as to size of the class, amount of unpaid wages owed due to rounding policy, and whether class members qualified for penalties).

1   Compl. ¶ 58 (emphasis added).[3]

2       Plaintiffs further alleged "[a]s with meal breaks, Defendants' failure to properly staff their

3   stores and coordinate the schedules of Plaintiffs and class members *prevented them* from taking

4   compliant rest breaks." *Id.*, ¶ 65 (emphasis added).  Plaintiffs further alleged that pursuant to the

5   California Wage Order(s) and California Labor Code section 226.7(b), "Plaintiffs and other class

6   members are entitled to recover from Defendants one (1) additional hour of pay at their regular

7   rate of compensation *for each work day that a compliant meal [and rest] period was not*

8   *provided*." *Id.* ¶¶ 60, 68.

9       As the court held in *Muniz v. Pilot Travel Centers LLC*, No. CIV S-07-0325 FCD EFB,

10  2007 WL 1302504, *4 (E.D. Cal. May 1, 2007), where a plaintiff does not allege facts specific to

11  the circumstances of allegedly missed meal and/or rest periods, a defendant may use a 100%

12  violation rate in calculating the amount in controversy.  Here, Plaintiffs simply cannot allege that

13  Claire's policies and practices "*required*" putative class members to "*often*"[4] forgo their meal and

14  rest breaks, yet at the same time claim that Defendants' extremely conservative calculation of one

15  missed (1) meal period *or* one (1) missed rest period per week is an "unsupported assumption."

16  Motion, 11:15-16.  Rather, Defendants' calculation of (1) meal period *or* one (1) rest period

17  violation occurring per employee per week, on average, is based on Plaintiffs' own Complaint

18  allegations and shows that the amount in controversy on this claim exceeds **$1,045,000** ($13.58,

19  one hour of pay * one meal *or* rest period violation/week * 77,023 weeks = $1,045,972).[5]  Indeed,

20  Plaintiffs' allegations claim an even higher frequency of violations as they allege these violations

21  _____

22  [3] Plaintiffs' contention that Defendants must provide "concrete evidence" of meal break
    violations is misguided given the standard in *Brinker Restaurant v. Superior Court*, 53 Cal.4th
    1004, 1052 (2012) that meal breaks need to be made available in order to be lawfully provided.
23  There is not "concrete evidence" of whether a meal break was made available, particularly given
    Plaintiffs' allegation that they clocked out for meals but continued to work.  Thus, it is entirely
24  appropriate to rely on Plaintiffs' assertion that violations were "often" to determine the amount in
    controversy.
25

26  [4] "Often" is defined as "on many occasions: in many instances or places… not seldom:
    FREQUENTLY…. " Webster's Third New International Dictionary, 2002.

27  [5] Claire's employed 968 putative class members for approximately 77,023 weeks during the
    relevant time period. *See* Talenco Decl., ¶ 7.  The average hourly wage of these Claire's
28  employees is $13.58.  *Id.* ¶ 8.

DEFS.' OPPOSITION TO MOTION TO REMAND
CASE NO. CV-13-00368 PSG

occurred "often", and for one (1) meal period *and* one (1) rest period violation per employee per week, on average, the amount in controversy exceeds **$2,091,000** ($13.58, one hour of pay * two meal/rest period violations * 77,023 weeks = $2,091,944).  Once again, Plaintiffs do not assert in their Motion that they are claiming *fewer* violations per week.

### G.    Plaintiffs' PAGA Claim Places More Than $5.1 Million In Controversy

#### 1.    Failure to Pay Overtime Civil Penalty

Defendants accepted Plaintiffs' allegations to be true and properly calculated PAGA penalties for alleged violations of Labor Code §§ 510 and 1198 for alleged unpaid overtime wages based on Plaintiffs' theory that Defendants ***systematically*** and ***often*** failed to pay overtime. *See* Compl., ¶ 46.  The civil penalty under California Labor Code § 558 for failure to pay the overtime premium is "fifty dollars ($50) for each underpaid employee for each pay period for which the employee is underpaid." Cal. Labor Code § 558.  This penalty can be recovered against "any employer", and here is sought against Plaintiffs' actual employer, Claire's, and the other defendants.  Compl. ¶ 89.  Thus, the amount in controversy for the § 558 civil penalty is **$568,950** (11,379 total pay periods for the year prior to the filing of the Complaint * $50 for the initial violation = $568,950).  (*See* Talenco Decl. ¶ 9).

#### 2.    Failure to Pay Minimum Wage Civil Penalty

Defendants properly calculated PAGA penalties for alleged violations of Labor Code §§ 1194, 1197, and 1197.1 for alleged off-the-clock work based on Plaintiffs' allegation that they "***often***" worked off-the-clock during the meal breaks and at the end of their shifts both to "complete their required duties" and to "take store funds to the bank," and that "Defendants failed to pay Plaintiffs and class members for this off-the-clock work." Compl., ¶ 46.  Labor Code § 1197.1 provides for statutory penalties of $100 for "any initial violation that is intentionally committed."  Based on Plaintiffs' theory that Defendants willfully failed to pay minimum wages, the amount in controversy for the § 1197.1 civil penalty is **$1,137,900** (11,379 total pay periods * $100 per pay period = $1,137,900).  Based on Plaintiffs' allegations in her Complaint that the putative class members worked off-the-clock through their 30-minute meal breaks, Plaintiffs clearly alleged ***at least*** 30 minutes (i.e. the length of one meal break) of unpaid wages per day.

### 3. Failure to Provide Meal and Rest Periods Civil Penalties

Defendants properly calculated PAGA penalties for alleged violations of Labor Code sections 226.7 and 512(a) for alleged unprovided meal and rest periods.  Plaintiffs allege that Claire's had a "***policy and/or practice***" of failing to adequately staff its stores, and that as a result, Plaintiffs and putative class members were required to and "***often***" worked through their meal and rest breaks to complete their work.  *Id.*, ¶ 58.  Based on Plaintiffs' claims that violations occurred "often," and that such violations are subject to "default" PAGA penalties, the amount in controversy is **$1,137,900** (11,379 total pay periods * $100 for the initial violation = $1,137,900).

### 4. Inaccurate Wage Statements Civil Penalty

Defendants properly calculated PAGA penalties for alleged violations of Labor Code § 226(a) for alleged inaccurate wage statements as to Plaintiffs and the one-year PAGA subclass.  Basing PAGA penalties on *only* the inaccurate wage statements claim, and applying *only* the initial $100 per pay period PAGA civil penalty, this results in at least **$1,137,900** in PAGA penalties for each of the 514 individuals who qualify under the Complaint's definition as "aggrieved employees" and based upon the 11,379 wage statements issued to these individuals during the relevant time period (11,379 total pay periods x $100 per pay period).  Talenco Decl. ¶¶ 6, 9.  This calculation is supported by the Talenco Declaration and Plaintiffs' own allegations that there were recurring inaccurate wage statements because they "***often*** had to work through their meal breaks while off-the-clock," that "Defendants also ***required*** Plaintiffs and class members to take store funds to the bank ('bank drops') after store hours while Plaintiffs and class members were off-the-clock… [but] failed to pay Plaintiffs and class members for this off-the-clock work," and that "Defendants failed to incorporate [their] non-discretionary bonuses ***into the calculation of the regular rate of pay*** for purposes of calculating the overtime rate."  Compl., ¶ 46.

### 5. Failure to Timely Pay Wages

Defendants properly calculated PAGA penalties for alleged ongoing violations of Labor Code § 204 for alleged failure to pay all wages due.  Plaintiffs allege that "[d]uring the relevant time period, Defendants failed to pay Plaintiffs and other aggrieved employees all wages due to

DEFS.' OPPOSITION TO MOTION TO REMAND
CASE NO. CV-13-00368 PSG

them, including, but not limited to, overtime wages, minimum wages and meal and rest period premium wages … ." *Id.*, ¶ 86.  The statutory penalty sought by Plaintiffs under Labor Code § 210, for a violation of Labor Code section 204, is $100 per pay period for each failure to pay each aggrieved employee.  Under Plaintiffs' theory of liability, the amount of penalties is **$1,137,900** (11,379 total pay periods * $100 per pay period = $1,137,900).

Plaintiffs cite to *Hernandez v. Towne Park, Ltd.*, No. 12-02972 MMM, 2012 U.S. Dist. LEXIS 86975, at *51-53 (C.D. Cal. June 22, 2012), for the proposition that "PAGA recovery should be calculated at 25% of the total, since Plaintiff may recover, at a maximum, 25% in civil penalties while the rest are fines collected by the state."  Motion, 12:16-19.  However, *Hernandez* is contrary to *Thomas v. Aetna Health of California, Inc.*, 2011 WL 2173715, at *14-*19 (E.D. Cal. June 2, 2011) and *Urbino v. Orkin Servs. of Cal., Inc.*, 882 F.Supp.2d 1152, 1162-64 (C.D. Cal. Oct. 5, 2011) (*review pending*, Nos. 11-56944, 11-57002 (9th Cir. Nov. 13, 2011)[6], which confirm that the amount in controversy is calculated based upon the entire PAGA penalty.  *See Id.* ("the amount in controversy in a PAGA claim is predicated on the total amount of civil penalties sought by the aggrieved employees").

### H.  Defendants Properly Included a 25 Percent Attorneys' Fee Recovery in the Amount in Controversy.

Plaintiffs argue that only attorneys' fees accrued up to the time of removal should be considered for calculating the amount in controversy.  Motion, 13:14-16.  Plaintiffs recognize there is a split in authority as to whether a reasonable estimate of *expected attorneys' fees* should be included in the amount in controversy.  *See Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002).  The substantial weight of authority sides with *Brady* to hold that a reasonable estimate of future attorneys' fees should be used in calculating the amount in controversy.  *Pulera v. F & B, Inc.*, 2008 WL 3863489, *4 (E.D. Cal. Aug. 19, 2008) ("While the Ninth Circuit has not yet ruled on this issue, the preponderance of courts in this Circuit have

/ / /

/ / /

---

[6] The Ninth Circuit heard oral argument in *Urbino* on March 5, 2013.

DEFS.' OPPOSITION TO MOTION TO REMAND
CASE NO. CV-13-00368 PSG

1    agreed with the Brady approach.").[7]

2         The Ninth Circuit has implied that it will ultimately adopt the same rule.  *See Guglielmino*

3    *v. McKee Foods Corp*., 506 F.3d 696, 700 (9th Cir. 2007) (implying propriety of including

4    claimed future attorneys' fees in determining amount in controversy); *see also Simmons v. PCR*

5    *Technology*, 209 F. Supp. 2d 1029, 1034-1035 (N.D. Cal. 2002) ("The Ninth Circuit clearly

6    considers attorneys' fees when assessing amount in controversy… Such fees necessarily accrue

7    until the action is resolved.  Thus, the Ninth Circuit must have anticipated that district courts

8    would project fees beyond removal.  The court determines the amount in controversy based on

9    the damages that can reasonably be anticipated at the time of removal.  Similarly, the measure of

10   fees should be the amount that can reasonably be anticipated at the time of removal, not merely

11   those already incurred") (citing *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir.

12   1998).  Defendants followed the majority view on this issue and properly included a 25%

13   attorneys' fee recovery when calculating the amount in controversy.

14        I.    **Defendants Have Shown To A Legal Certainty That The Amount In**
              **Controversy Exceeds $5 Million**
15

16        Based on Plaintiffs' allegations, theories, and prayer for relief and the evidence submitted

17   by Defendants, Plaintiffs have placed over $5 million in controversy (at least $1,271,836 for

18   waiting time penalties, $1,568,000 for unpaid overtime, $2,091,000 for meal and rest period

19   premium pay, $5,120,000 for PAGA penalties, $2,297,183 for attorneys' fees = $12,348,019).

20   Plaintiffs have not refuted the evidence presented by Defendants and they cannot refute their own

21   [7]  *See also Giannini v. Northwestern Mut. Life Ins. Co*., 2012 WL 1535196, *4 (N.D. Cal. Apr.

22   30, 2012) (citing to *Brady* while holding that a reasonable estimate of future attorneys' fees can
     be used in calculating the amount in controversy); *Chambers v. Penske Truck Leasing Corp.*,

23   2011 WL 1459155, *4 (E.D. Cal. Apr. 15, 2011) (holding that attorneys' fees are to be included
     in amount in controversy where an underlying statute authorizes the award); *Richardson v.*

24   *Servicemaster Global Holdings Inc.*, 2009 WL 4981149, *4 (N.D. Cal. Dec. 15, 2009) (citing

25   *Brady* favorably to require a showing of attorneys' fees like to be incurred to determine the
     amount in controversy); *Celestino v. Renal Advantage, Inc*., 2007 WL 1223699, *3-*4 (N.D. Cal.

26   Apr. 24, 2007) (the amount in controversy includes not only damages accrued up to the time of
     removal, but also a reasonable assessment of damages likely to be accrued after the time of

27   removal); *Alexander v. FedEx Ground Package System, Inc*., 2005 WL 701601, *5 (N.D. Cal.
     Mar. 25, 2005) (citing *Brady* and holding that attorneys' fees are considered part of the amount in

28   controversy for diversity purposes where there is an underlying statute authorizing such award).

19                              DEFS.' OPPOSITION TO MOTION TO REMAND
                               CASE NO. CV-13-00368 PSG

allegations in the Complaint.  Courts have concluded that the legal certainty test has been met by defendants who offer uncontroverted evidence of the amount in controversy, as here.  *See, e.g., Cox*, 2008 WL 2167027 at *2 (uncontroverted evidence meets the legal certainty test).

The cases cited by Plaintiffs are inapposite because the defendants in those cases assumed a violation rate *without* basing the violation rate on the facts alleged in the complaint or provided via declaration.  *See, e.g., Cifuentes v. Red Robin Int'l, Inc.*, No. C-11-5635-EMC, 2012 U.S. Dist. LEXIS 27211, *16 (C.D. Cal. Mar. 1, 2012) (finding that defendant included speculative *future* waiting time penalties); *Lopez v. Source Interlink Co., Inc.*, No. 2:12-CV-00003-JAM-CKD, 2012 U.S. Dist. LEXIS 44288, *9 (E.D. Cal. Mar. 29, 2012) (finding that defendant improperly included in its calculations employees who were *not* class members); ; *Jimerson v. Genco Distribution Sys., Inc.,* No. C 11-05157SBA, 2012 U.S. Dist. LEXIS 149489 (N.D. Cal. Sept. 28, 2012) (finding defendant improperly assumed every class member worked the same amount of overtime that plaintiff allegedly worked); *Hernandez v. Towne Park, Ltd.*, No. 12-02972 MMM, 2012 U.S. Dist. LEXIS 86975, *7 (C.D. Cal. June 22, 2012) (finding defendant's calculations of amount in controversy were based on assumptions that had no evidentiary basis).[8]

/ / /

/ / /

/ / /

---

[8] *See also*, *Jones v. ADT Security Svcs.*, No. 11-7750-PSG (JCGx), 2012 U.S. Dist. LEXIS 558, *13 (C.D. Cal. Jan. 3, 2012) (finding no allegations to support assumption of a maximum violation rate for wage statement claim); *Montalvo v. Swift Transp. Corp.*, No. 11-cv-1827, 2011 U.S. Dist. LEXIS 145803 (S.D. Cal. Dec. 19, 2011) (finding that calculations were based on class-size estimates that were not supported by evidence or allegations in the complaint); *Garcia v. Roadlink USA Pac., LLC*, No. SACV 11-0445 DOC (AJWx), 2011 U.S. Dist. LEXIS 60903, *11 (C.D. Cal. June 7, 2011) (finding that the defendants assumed the plaintiffs were seeking maximum penalties even though the plaintiffs did not allege so); *Riddoch v. McCormick & Schmicks Seafood Rest., Inc.*, No. 09-CV-07127, 2010 U.S. Dist. LEXIS 65799 (C.D. Cal. Jun 28, 2010) (finding no support for assumption that every class member was denied one hour of overtime per week and missed seven meal periods per pay period); *Fletcher v. Toro Co.*, 2009 U.S. Dist. LEXIS 126693 (S.D. Cal. Feb 3, 2009) (no support for assumption that every class member worked every work day for four years);  *Ramirez v. HMS Host USA, Inc.*, No. 5:12-CV-04683-EJD, 2012 U.S. Dist. LEXIS 170676, *12-13 (N.D. Cal. Nov. 30, 2012) (defendants improperly valued the plaintiff's injunctive relief claims as placing $3,728,888 in controversy).

DEFS.' OPPOSITION TO MOTION TO REMAND
CASE NO. CV-13-00368 PSG

**III.    THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION BECAUSE THERE IS COMPLETE DIVERSITY AND THE AMOUNT IN CONTROVERSY EXCEEDS $75,000**

    **A.    Plaintiffs' Inclusion of Shelley Muzsek as an Individual Defendant Does Not Destroy Complete Diversity of Citizenship**

Plaintiffs claim that complete diversity does not exist because they sued alleged California resident Shelley Muzsek ("Muzsek") as an individual defendant.  Because Muzsek is a sham defendant, her inclusion as a defendant does not defeat traditional diversity.

        1.    Muzsek Cannot Be Held Liable Under Labor Code § 558 and Thus Is a Sham Defendant

As described in the Notice of Removal, Plaintiffs fraudulently joined Muzsek for the sole purpose of defeating diversity jurisdiction, and such fraudulent joinder does not preclude removal.  *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (citing *McCabe v. General Foods Corp.*, 811 F.2d 1336 (9th Cir. 1987)); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998).

Plaintiffs do not dispute that individual supervisors generally cannot be liable for Labor Code violations, but argue for an exception via the civil penalty provision codified in California Labor Code § 558.  Plaintiffs' argument is flawed because:  (1) only the Labor Commissioner (*not* private litigants such as Plaintiffs) may bring direct claims under § 558; (2) individual liability under § 558, if any, is limited to "high level" employees, and, Plaintiffs failed to allege *any* facts showing that Muzsek qualifies for such status or to rebut the declaration submitted by Claire's describing Muzsek's limited supervisory role; and (3) the PAGA, upon which Plaintiffs' § 558 claim is premised, does *not* provide a cause of action against an individual supervisor, such as Muzsek, because Plaintiff is not an "aggrieved employee" of Muzsek.

First, Plaintiffs have no right to sue Muzsek under § 558.  Controlling legal authority clearly and unambiguously establishes that no private right of action exists under § 558; only the Labor Commissioner may enforce § 558.  *Ruiz v. Paladin Group, Inc.*, 2003 WL 22992077, at *2 (C.D. Cal. Sept. 29, 2003) (holding that plaintiff's claim for penalties under § 558 could not withstand a motion to dismiss, because § 558 did not create a private right of action).  The

DEFS.' OPPOSITION TO MOTION TO REMAND
CASE NO. CV-13-00368 PSG

Section 558 "comprehensive administrative scheme, together with the absence of reference to a private right of action, strongly suggests that the Legislature did not intend to create a private right of action." *Id.*; *see also Caliber Bodyworks, Inc. v. Superior Ct.*, 134 Cal. App. 4th 365, 377-78, 381-86 (2005) (discussing "civil penalties" under the Labor Code which were enforceable only by California's labor law enforcement agencies); *Franco v. Athens Disposal Co.*, 171 Cal. App. 4th 1277, 1300 (2009) (stating that "[b]efore the PAGA was enacted, an employee . . . could not collect civil penalties"). For this reason, each and every claim asserted against Muzsek based on § 558 is a sham and invalid.

Second, while tacitly conceding they have no private right of action under § 558, Plaintiffs attempt to assert a claim against Muzsek through their claim for PAGA penalties in the Seventh Cause of Action. Plaintiffs' argument is fatally flawed, however, because PAGA does not allow claims against individual supervisors such as Muzsek. Specifically, PAGA allows an "aggrieved employee" to bring a civil action to recover penalties for violation of certain Labor Code provisions. An "aggrieved employee" is defined as "any person who was *employed* by the alleged violator." Lab. Code § 2699 (emphasis added). Here, it is undisputed that Muzsek was not an employer of Plaintiffs or any putative class member. Consequently, Plaintiffs may not assert a PAGA claim against Muzsek. *Id.* § 2699(a), (c); *see also Reynolds v. Bement*, 36 Cal. 4th 1075, 1087-88 (2005) overruled on other grounds by *Martinez v. Combs*, 49 Cal.4th 35, (2010) (rejecting plaintiff's attempt to argue that the "exercises control" language in the definition of employer in the wage orders imposes individual liability on supervisors under the Labor Code provisions). Plaintiffs were employed solely by the corporate entity Claire's and their PAGA claims are expressly limited to claims against their employer Claire's.

Courts reviewing claims for civil penalties under § 558 via the PAGA have permitted actions to proceed against individual defendants *only* where those defendants were *owners and officers* of the employer. *See, e.g., Martinez v. Antique & Salvage Liquidators, Inc.*, No. C09-00997, 2011 U.S. Dist. LEXIS 19198, *4-6 (N.D. Cal. February 25, 2011) (order modifying grant of summary judgment finding that an individual <u>owner</u> of a company could be liable under PAGA for violation of Labor Code § 558.); *Helm v. Alderwoods Group, Inc.*, 696 F. Supp. 2d 1057,

DEFS.' OPPOSITION TO MOTION TO REMAND
CASE NO. CV-13-00368 PSG

1074 (N.D. Cal. 2009) (individual <u>corporate officers</u> may be personally liable under § 558);

*Ochoa-Hernandez v. Cjaders Foods, Inc.,* No. C 08-02073 MHP, 2009 U.S. Dist. LEXIS 42481

(N.D. Cal. May 18, 2009) (court permitted amended complaint adding individuals <u>who owned</u>

<u>and controlled</u> employer for PAGA cause of action by way of § 558); *Ontiveros v. Zamora,* No.

CIV. S-08-567 LKK/DAD, 2009 U.S. Dist. LEXIS 13073 (E.D. Cal. February 20, 2009) (finding

on motion for judgment on the pleadings that allegation that <u>owner</u> of company caused Labor

Code violations was adequate for § 558).

The cases upon which Plaintiffs rely are distinguishable and they also are inconsistent

with the weight of authority to the extent they suggest employees other than high level

executives/owners could be held individually liable.  In *Vigil*, 2012 U.S. Dist. LEXIS 112928,

*10-*11, the Court pointed to *specific factual allegations* of individual wrongdoing that the

plaintiff made to support her claims against the individual defendant.  *See also Ramirez,* 2012

U.S. Dist. LEXIS 170676 at *7-8 (relying on *Vigil).*  In *Velazquez v. HMS Host USA, Inc.,* 2012

U.S. Dist. LEXIS 172801, *14-*15 (E.D. Cal. Dec. 4, 2012), the Court found significant the fact

that the plaintiff could feasibly amend her complaint to allege that the individual defendant "took

specific actions on behalf of the company to violate wage and hour provisions".  Here, Plaintiffs

allege no such "specific actions" by Muzsek, nor could they do so, given that Muzsek is merely a

supervisory employee who "has not had and does not have responsibility for establishing CBI's

policies or procedures."  Talenco Decl. ¶ 10.  Plaintiffs' attempt to rely on their vague use of the

phrase "Defendants" in the Complaint – without any allegations to support the conclusion that

Muzsek was <u>herself</u> an owner, corporate officer, or other controlling person. Yet this is clearly

insufficient to create any basis to hold Muzsek individually liable.  As a result, Plaintiffs have

failed to rebut Defendants' showing that Muzsek cannot be liable and is a sham defendant whose

state of residence cannot defeat traditional diversity jurisdiction in this action.

> 2.  Even Assuming Muzsek Theoretically Could Be Held Liable Under § 558, The Complaint Does Not Allege Substantive Facts To Support Liability Pursuant to the Applicable Pleading Standard

Even if Muzsek was a "high-level" owner or executive (which she was not), the

Complaint does not plead <u>any</u> substantive facts to support a finding that Muzsek did in fact

"cause" any violations that could serve as the basis for personal liability under § 558.  The sole

allegations against Muzsek are as follows:

> Defendant SHELLEY MUZECK [sic] was and is, upon information and belief, an
> individual residing in the state of California, and was the district manager at the
> Claire's location where Plaintiffs worked.  Pursuant to California Labor Code
> section 558 and PAGA, SHELLEY MUZECK [sic] is named as a "person acting
> on behalf of an employer" who violated, and caused to be violated, various
> sections of Division 2, Part 2, Chapter 1, and various sections of the applicable
> Industrial Welfare Commission Order which regulate days and hours of work.
> Only civil penalties and unpaid wages are sought against SHELLEY MUZECK
> [sic] pursuant to Labor Code section 558.
> …
> Plaintiffs are informed and believe, and thereon allege, that each and all of the
> acts and omissions alleged herein were performed by, or is attributable to,
> CLAIRE'S, STORES, INC., CLAIRE'S BOUTIQUES, INC., SHELLEY
> MUZECK [sic], CBI DISTRIBUTING CORPORATION., and/or DOES 1
> through 10 (collectively "Defendants"), each acting as the agent for the other,
> with legal authority to act on the other's behalf.  The acts of any and all
> Defendants were in accordance with, and represent, the official policy of
> Defendants.
>
> At all relevant times, Defendants, and each of them, ratified each and every act or
> omission complained of herein.  At all relevant times, Defendants, and each of
> them, aided and abetted the acts and omissions of each and all the other
> Defendants in proximately causing the damages herein alleged.

Compl. ¶¶ 12; 15-16.

These conclusory and non-substantive allegations are the sum total of the references to

Muzsek in the Complaint. The Ninth Circuit's standard for fraudulent joinder looks to whether

the plaintiff's failure to state a claim "is obvious according to the settled rules of the state ...."

*McCabe v. General Foods Corp.*  811 F.2d 1336, 1339 (9th Cir. 1987).  If, as here, specific facts

are not pled, removal is allowed.  *See Brown v. Allstate Ins. Co.*, 17 F.Supp.2d 1134 (S.D. Cal.

1998) (upholding removal where non-diverse individual defendants were named in the caption

and in some of the causes of action, but there were *no specific factual allegations against them*).

**B.    The Requisite Amount in Controversy for Traditional Diversity of
Citizenship Exists Based Upon Plaintiffs' PAGA Penalties Claim**

For purposes of diversity jurisdiction, potential PAGA penalties can be aggregated to

determine the amount in controversy alleged by Plaintiffs.  *See Thomas v. Aetna Health of

California, Inc.*, 2011 WL 2173715, at *14-*19 (E.D. Cal. June 2, 2011); *Urbino v. Orkin Servs.

of Cal., Inc.*, 882 F.Supp.2d 1152, 1162-64 (C.D. Cal. Oct. 5, 2011) (*review pending*, Nos. 11-

56944, 11-57002 (9th Cir. Nov. 13, 2011).  This is an exception to the typical anti-aggregation rule and applies where multiple plaintiffs unite to assert a "common and undivided interest." *Urbino*, 882 F.Supp.2d at 1162.  This exception applies to PAGA claims because:  (1) such claims are essentially law enforcement actions brought by an aggrieved individual on behalf of the State; (2) PAGA claims can be brought only on a representative (not a class) basis; and (3) PAGA awards penalties to the aggrieved parties as a whole (not based on individual determinations) in that, of the total amount awarded, only 25% is allocated for distribution to the group (the other 75% going to the Labor and Workforce Development Agency ("LWDA")).  *Id.* at 1162-63.  These distinctive features make PAGA claims analogous to shareholder derivative lawsuits, in which potential damages are aggregated for determining the amount in controversy. *Id.* at 1163.  Thus, pursuant to the decisions in *Thomas* and *Urbino*, this Court should aggregate the PAGA penalties sought by Plaintiffs when determining whether the $75,000 threshold is met for traditional diversity of citizenship jurisdiction.

As shown above, even assuming PAGA penalties for just *one* of Plaintiffs' fourteen (14) alleged PAGA violations, and applying only the *initial* $100 per pay period PAGA civil penalty, this results in at least **$1,137,900** in PAGA penalties under a legally certain standard (based on Plaintiffs' own allegations) (calculated as 11,379 total pay periods x $100 per pay period).  Plaintiff's PAGA allegations are undeniably more than sufficient to meet the $75,000 threshold amount in controversy for purposes of traditional diversity jurisdiction.  28 U.S.C. § 1332(a); *Thomas*, 2011 WL 2173715, at *19.

## IV. CONCLUSION

Defendants have met their burden of establishing federal jurisdiction.  The Court should deny Plaintiffs' Motion in its entirety and order all appropriate relief in favor of Defendants.

Dated: March 8, 2013                     MORGAN, LEWIS & BOCKIUS LLP

By   */S/ Eric Meckley*
_____
Eric Meckley
Attorneys for Defendants CLAIRE'S STORES,
INC., CLAIRE'S BOUTIQUES, INC., CBI
DISTRIBUTING CORPORATION and SHELLEY
MUZSEK