1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                          SAN JOSE DIVISION

11

12   MAYRA QUINTANA, et al,              )   Case No.: 13-0368-PSG
                                         )
13                      Plaintiffs,      )   **ORDER DENYING MOTION TO**
           v.                            )   **REMAND**
14                                       )
     CLAIRE'S STORES, INC., et al,       )   **(Re: Docket No. 15)**
15                                       )
                        Defendants.      )
16   _____ )

17          Plaintiffs Mayra Quintana, et al ("Plaintiffs") move to remand this action back to Santa

18   Clara County Superior Court.  Defendants Claire's Stores, Inc., et al ("Defendants") oppose.  The

19   parties appeared for oral argument on April 9, 2013.  Having considered the parties' papers and

20   arguments, the court DENIES Plaintiffs' motion.

21          Plaintiffs originally filed this action in Santa Clara County Superior Court and allege that

22   Defendants violated various California Labor Code provisions by, among other things, failing to

23   record and pay hourly wages, failing to provide required meal and rest breaks, and failing to pay

24   wages upon termination.[1]  Plaintiffs' claims include claims for penalties under the Private Attorney

25   General Act ("PAGA").  Defendants removed the case to this court pursuant to the Class Action

26

27   Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), and alternatively, on the grounds that diversity

28   _____
     [1] *See* Docket No. 1 Ex. A.

United States District Court
For the Northern District of California

jurisdiction exists pursuant to 28 U.S.C. § 1332(a).[2]  In support of CAFA jurisdiction, Defendants assert that Plaintiffs' claims when aggregated exceed the $5 million damages threshold, that more than 100 potential class members exist, and that there is minimal diversity between the parties.[3] Defendants further contend that complete diversity exists because the sole California citizen defendant, Shelley Muzsek, was joined fraudulently for the sole purpose of defeating diversity jurisdiction.[4]

Plaintiffs move to remand the action back to state court because, they argue, Defendants have not shown with legal certainty that the amount in controversy exceeds $5 million.  In their complaint, Plaintiffs seek "damages, restitution penalties, injunctive relief, and attorneys' fees in excess of twenty-five thousand dollars . . . but not to exceed five million dollars."[5]  They also "reserve the right to amend [their] prayer for relief to seek a different amount."[6]  As to Muzsek's inclusion as a defendant, Plaintiffs assert that they may raise a cause of action against her under California Labor Code Section 558 for civil penalties arising from unpaid wages, and so she is a proper defendant and an obstacle to complete diversity.[7]

## I.      LEGAL STANDARDS

The removal statute, 28 U.S.C. § 1441, provides in part, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division

---

[2] *See* Docket No. 1.

[3] *See id.*

[4] *See id.*

[5] *See id.* Ex. A.

[6] *See id.*

[7] *See* Docket No. 19.

2

Case No.: 13-368-PSG
ORDER DENYING PLAINTIFFS' MOTION TO REMAND

embracing the place where such action is pending."[8]  Section 1332(d) "vests district courts with

original jurisdiction of any civil action in which, inter alia, the amount in controversy exceeds the

sum or value of $5,000,000, exclusive of interest and costs, and in which the aggregate number of

proposed plaintiffs is 100 or greater, and any member of the plaintiff class is a citizen of a state

different from any defendant."[9]  District courts have diversity jurisdiction over all civil actions

between citizens of different states where the amount in controversy exceeds $75,000, exclusive of

interest and costs.[10]  If at any time before final judgment it appears that the district court lacks

subject matter jurisdiction over a case that has been removed to federal court, the case must be

remanded.[11]

Upon a motion to remand to state court, the party asserting federal jurisdiction has the

burden of proof.  "The burden of establishing federal jurisdiction is upon the party seeking

removal, and the removal statute is strictly construed against removal jurisdiction."[12]  "The strong

presumption against removal jurisdiction means that the defendant always has the burden of

establishing that removal is proper."[13]

## II.  DISCUSSION

Regarding this court's jurisdiction under CAFA, the parties do not dispute the numerosity

or minimum diversity elements; only the amount in controversy element is at issue.  The parties

---

[8] 28 U.S.C. § 1441(a).

[9] *Lowdermilk v. U.S. Bank Nat. Assn.*, 479 F.3d 994, 997 (9th Cir. 2007) (quotation and citation omitted).

[10] *See* 28 U.S.C. § 1332(a).

[11] *See* 28 U.S.C. § 1447(c).

[12] *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988) (citations omitted).

[13] *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (quotation omitted).

3

Case No.: 13-368-PSG
ORDER DENYING PLAINTIFFS' MOTION TO REMAND

**United States District Court**
For the Northern District of California

1    further dispute Defendants' burden to show that the amount-in-controversy threshold has been met,

2    and so the court begins with a determination of the proper burden of proof.

3    **A.    Burden of Proof**

4              The complaint determines the burden on the party asserting federal subject matter

5    jurisdiction to show satisfaction of the amount-in-controversy.[14]  If the complaint alleges damages

6    exceeding the jurisdictional minimum, a presumption arises that the amount in controversy has

7    been satisfied and a party challenging jurisdiction must show with "legal certainty that the claims is

8    actually for less than the jurisdictional minimum."[15]  If plaintiffs fail to plead a specific amount,

9    proponents of federal jurisdiction "must prove by a preponderance of the evidence that the amount

10   in controversy requirement has been met."[16]  If plaintiffs seek an amount in damages less than the

11   jurisdictional threshold, "the party seeking removal must prove with legal certainty that CAFA's

12   jurisdictional amount is met."[17]

13             Defendants argue that because Plaintiffs did not account for their PAGA claims in the

14   jurisdictional section of the complaint and because they include a reservation of their rights to

15   pursue greater damages, the amount in controversy is ambiguous and therefore the preponderance

16   of evidence standard applies.[18]  The jurisdiction and venue section of the complaint states:

17

18             Plaintiffs allege that the amount in controversy for each class representative, including
              claims for monetary damages, restitution, penalties, injunctive relief, and attorneys' fees, is
19            less than [$75,000] and that the aggregate amount in controversy for the proposed class
              action, including monetary damages, restitution, penalties, injunctive relief, and attorneys'
20            fees, is less than [$5,000,000], exclusive of interests and costs.  Plaintiffs reserve the right

21

22   _____

23   [14] *See id.*

24   [15] *Id.* at 998 (internal quotations and citations omitted).

25   [16] *Id.*

26   [17] *Id.* at 1000.

27   [18] Defendants present other reasons that the amount-in-controversy statements are ambiguous, but
     because the court finds that the exclusion of the PAGA claims renders the complaint ambiguous, it
28   does not consider those other grounds.

                                                        4

Case No.: 13-368-PSG
ORDER DENYING PLAINTIFFS' MOTION TO REMAND

to seek a larger amount based upon new and different information resulting from investigation and discovery.[19]

Plaintiffs concede that they did not include any PAGA recovery in their jurisdiction disclaimer, but they assert that when brought as representative actions rather than class actions, PAGA claims are not removable under CAFA.[20]  Plaintiffs assert that because a representative PAGA claim is not removable under CAFA, they need not include PAGA penalties in their assessment of the amount-in-controversy for jurisdiction.  They argue that because they included the necessary class action damages, their statement regarding the amount-in-controversy is sufficiently certain to require review under the stricter "legal certainty" standard articulated in *Lowdermilk v. United States Bank National Association*.[21]

In *Lowdermilk*, the Ninth Circuit considered the removing party's burden when a complaint states a specific amount in damages that is below the jurisdictional threshold.[22]  The plaintiff in that case alleged that "[t]he aggregate total of the claims pled herein do [sic] exceed five million dollars."[23]  The Ninth Circuit held that the plaintiff had pleaded a "specific amount in damages" and observed that the removing party had to "not only contradict the plaintiff's own assessment of damages," but also "overcome the presumption against federal jurisdiction."[24]  The Ninth Circuit ultimately held that "where the plaintiff has pled an amount in controversy less than $5,000,000,

---

[19] *See* Docket No. 1 Ex. A ¶ 1.

[20] *See Sample v. Big Lots Stores, Inc.*, Case No. C 10-03276 SBA, 2010 WL 4939992, at *3 (N.D. Cal. Nov. 30, 2010).

[21] 479 F.3d at 997.

[22] *See id.* at 998.

[23] *See id.* at 1003 (J. Kleinfeld dissenting) (quoting complaint).

[24] *Id.* at 999.

5

Case No.: 13-368-PSG
ORDER DENYING PLAINTIFFS' MOTION TO REMAND

United States District Court
For the Northern District of California

1   the party seeking removal must prove with legal certainty that CAFA's jurisdictional amount is

2   met."[25]

3          In *Guglielmino v. McKee Foods Corp.*,[26] which was issued shortly after *Lowdermilk*, the

4   Ninth Circuit advised that if the amount in damages is ambiguous when considering the entire

5   complaint, a claim that the amount-in-controversy falls below the jurisdictional amount does not

6   require application of the legal certainty standard.[27]  In *Guglielmino*, the plaintiffs alleged in their

7   jurisdiction statement that "the sum of such damages and the value of injunctive relief sought by

8   plaintiff in this action is less than $75,000" but claimed in the prayer for relief several remedies,

9   including statutory damages, punitive and exemplary damages, attorneys' fees and costs, payment

10  of back taxes and benefits, and a "notice of the right to rescission and restitution to similarly

11  situated" parties.[28]  The Ninth Circuit held that because the plaintiffs sought attorneys' fees and

12  back payment that did "not fall comfortably within the realm of damages" and therefore were not

13  included in the plaintiff's damages jurisdiction statement, the complaint was ambiguous as to the

14  amount in controversy.[29]

15

16

17         Plaintiffs' complaint here more closely aligns with the complaint in *Guglielmino* because

18  they have failed to include in their assessment of their damages or the amount-in-controversy all of

19  the potential remedies they seek in their complaint.  Plaintiffs make no assertion that the language

20  in either their jurisdiction statement or their prayer for relief includes their PAGA claims.  They in

21  fact state that not only did they not include their PAGA claims in the requests for relief but that

22  "[b]ecause PAGA is not a class action and cannot be removed under CAFA, Plaintiffs correctly

23  ────────────────────

24  [25] *Id.* at 1000.

25  [26] 506 F.3d 696 (9th Cir. 2007).

26  [27] *See id.* at 700.

27  [28] *See id.*

28  [29] *See id.* at 701.

Case No.: 13-368-PSG
ORDER DENYING PLAINTIFFS' MOTION TO REMAND

leave the representative action out of the amount in controversy averment for [their] class action."[30]

To support this argument, Plaintiffs rely on Ninth Circuit case law holding the representative

actions cannot be removed under CAFA.[31]  But Plaintiffs cite no case law, and the court has not

found any, suggesting that representative PAGA claims accompanying class action claims are

exempt from the amount-in-controversy calculation. Several district courts in fact have considered

PAGA claims in their assessment of the amount in controversy in similar remand motions.[32]

   *Guglielmino* supports inclusion of the PAGA claims in the amount-in-controversy

evaluation.  In that case, the Ninth Circuit noted that "because recovery of [back payment of health

benefits and taxes and an accounting of moneys due] would entail payment by" the defendant, the

court was "convinced that they must be included within any amount-in-controversy calculation."[33]

It is true that *Guglielmino* did not involve removal under CAFA, but the statute itself further

supports that PAGA claims should be part of the amount-in-controversy analysis.  CAFA instructs

---

[30] *See* Docket No. 19 at 3.

[31] *See Wash. St. v. Chimei Innolux Corp.*, 659 F.3d 943, 850 (9th Cir. 2011).

[32] *See, e.g., Negrete v. PetSmart, Inc.*, Case No. 2:12-cv-02674-MCE-EFB, 2013 WL 875960, at *9 (E.D. Cal. Mar. 7, 2013) (considering PAGA claims for amount in controversy but finding defendant failed to show with legal certainty each class member's entitlement); *Trang v. Turbine Engine Components Tech. Corp.*, Case No. CV 12-07658 DDP (RZx), 2012 WL 6618854, at *5-*6 (C.D. Cal. Dec. 19, 2012) (including PAGA claims in amount-in-controversy analysis); *Velasquez v. HMS Host USA, Inc.*, Case No. 2:12-CV-02312-MCE-CKD, 2012 WL 6049608, at *9 (E.D. Cal. Dec. 5, 2012); *Ramirez v. HMS Host USA, Inc.*, Case No. 5:12-cv-04683 EJD, 2012 WL 6000565, at *4-*5 (N.D. Cal. Nov. 30, 2012) (including PAGA claims as part of amount-in-controversy analysis and notably excluding injunctive relief costs as "incidental" under CAFA).

[33] *Guglielmino*, 506 F.3d at 701.  The Ninth Circuit's determination that the "either viewpoint" test does not apply to class actions does not require a different result.  *See In re Ford Motor Co./Citibank (South Dakota), N.A.*, 264 F.2d 952, 959 (9th Cir. 2001).  The "either viewpoint" test allows courts to look either to what a plaintiff will gain or what a defendant will pay to determine the amount-in-controversy.  *See id.*  Noting that the "either viewpoint" test conflicted with the Supreme Court's determination that plaintiffs cannot aggregate their claims for class action standing, *see Zahn v. International Paper Co.*, 414 U.S. 291 (1973), the Ninth Circuit declined to extend the test to class actions, *see In re Ford Motor*, 264 F.2d at 959.  CAFA, however, explicitly endorses aggregation of plaintiffs' claims to determine whether the $5,000,000 threshold is met. *See* 28 U.S.C. § 1332(d)(6).  The court thus finds *Guglielmino*'s reasoning equally persuasive in the CAFA context.

7

Case No.: 13-368-PSG
ORDER DENYING PLAINTIFFS' MOTION TO REMAND

**United States District Court**
For the Northern District of California

courts that "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."[34]  Plaintiffs are members of the class they seek to represent, and so their PAGA representative claims must be included in the court's aggregation of claims for determination of whether CAFA jurisdiction exists.

Because Plaintiffs have admitted that their jurisdiction and damages statements do not account for all of the claims that they raise in their complaint, the court finds their statements ambiguous.  Application of the preponderance of evidence standard is proper.[35]

**B.      Amount-in-Controversy Showing**

Under the preponderance of evidence standard, Defendants must show that it is more likely than not that the entire amount-in-controversy exceeds $5 million.[36]  The court may require the party asserting federal subject matter jurisdiction to present "summary-judgment-type" evidence to support the assertion.[37]  In support, Defendants submitted two declarations, one with the removal notice[38] and a second with its opposition to Plaintiffs' motion to remand.[39]  After briefing on the

---

[34] 28 U.S.C. § 1332(d)(6).

[35] The court also notes that the Supreme Court's recent decision in *Standard Fire Insurance Co. v. Knowles*, 133 S.Ct. 1345 (2013), further supports consideration of the entire complaint for an assessment of the amount in controversy.  In that case, the Court held that plaintiffs in putative class actions cannot stipulate to damages below the threshold minimum to avoid federal jurisdiction because they cannot bind the absent class members before class certification.  *See id.* at 1349.  Although Plaintiffs have not stipulated to damages less than $5 million, an assessment of the entire complaint appears nevertheless necessary to determine whether they are attempting to avoid federal jurisdiction by not pursuing the entire amount in damages to which the putative class is entitled.

[36] *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).

[37] *See id.*; *see also Sol v. Pivotal Payments, Inc.*, Case No. 5:11-cv-6430 EJD, 2012 WL 823246, at *3 (N.D. Cal. Mar. 9, 2012).

[38] *See* Docket No. 2.

[39] *See* Docket No. 17 Ex. 1.

8

Case No.: 13-368-PSG
ORDER DENYING PLAINTIFFS' MOTION TO REMAND

1   motion ended, Defendants requested leave to file additional evidence consisting of Plaintiffs'

2   responses to interrogatories about their claims.[40]  Plaintiffs oppose Defendants' request to submit

3   the additional evidence on the grounds that Defendants filed an improper administrative motion.[41]

4   Given that Defendants obtained Plaintiffs' responses after the deadline to file its opposition and

5   that Plaintiffs' responses are relevant to the assessment of the amount in controversy, the court

6   finds good cause to allow Defendants to submit the additional evidence.  The motion is

7   GRANTED.

8       1.       **Defendants' Calculations**

9        Relying on these documents, Defendants have calculated potential damages for four of

10  Plaintiffs' claims.  The court briefly summarizes each of Defendants' calculations:

11
12  - **Waiting Time Penalties Claim: Excess of $1.2 Million.**  Relying on Plaintiffs' definition
        of the class as "[a]ll persons employed by defendants as hourly-paid, non-exempt assistant
        managers and/or store managers in a California retail store within four years prior to the
13      filing of" the complaint until date of certification[42] and Plaintiffs' allegation that "[d]uring
        the relevant time period, Defendants wilfully [sic] failed to pay class members who are no
14      longer employed by Defendants the earned and unpaid wages,"[43] Defendants assert that
        each member of the class may maintain at least one 30-day maximum waiting time
15      penalty.[44]  Defendants assume each class member is entitled to one entire daily wage,
        which Defendants present evidence was an average of $13.34 per hour for a seven-hour
16      day, or $93.38 per day.[45]  For the 30-day maximum penalty, Defendants assert that each
        class member would be entitled to at least $2,801.40.  For the 454 putative class members
17      Defendants identified as having ended employment during the period,[46] Defendants assert
        that the waiting time penalties would be at least $1,271,835.60.
18
19

20  ―――――――――――――――――――

21  [40] *See* Docket No. 29.

22  [41] *See* Docket No. 32.

23  [42] *See* Docket No. 1 Ex. A ¶ 20.

24  [43] *See id.* ¶¶ 37-38.

25  [44] *See* Cal. Labor Code § 203 ("If an employer willfully fails to pay, without abatement or
        reduction, in accordance with Sections 201, 201.3, 201.5, 202, and 205.5, any wages of an
26      employee who is discharged or who quits, the wages of the employee shall continue as a penalty
        from the due date thereof at the same rate until paid or until an action therefor is commenced; but
27      the wages shall not continue for more than 30 days.").

28  [45] *See* Docket No. 2 ¶¶ 6, 8.

Case No.: 13-368-PSG
ORDER DENYING PLAINTIFFS' MOTION TO REMAND

- **Overtime Claims: Excess of $1.5 Million.**  Relying on allegations in the complaint including that Defendants "systematically understaffed the retail locations where Plaintiffs and class members worked," that Plaintiffs "often had to work through their meal breaks while off-the-clock," and that Defendants had a "policy and/or practice" of requiring Plaintiffs and class members to work even without clocking in overtime,[47] Defendants assume each class member had at least one hour of overtime for which they were not paid for each week that they worked.  According to Defendants, the putative class includes 968 employees who worked approximately 77,023 weeks.[48]  Defendants' declarant asserts that the hourly wage for these employees was $13.58,[49] which makes their average overtime wage $20.37 per hour.  At Defendants' estimate of one hour per week that potential class members were not paid overtime wages, Defendants assert the value of the overtime claims is $1,568,958.

- **Meal and Rest Period Claims: Excess of $1 Million.**  Relying on the same language in the complaint, Defendants assume that each putative class member missed one meal period or one rest break every week for the four year period in the complaint.  Defendants calculate one violation, valued at the average hourly wage of $13.58,[50] for the 77,023 weeks the putative class members worked[51] to reach a value of $1,045,000 for the meal and rest period claims.

- **PAGA Claims: Excess of $5.1 Million.**  Defendants offer evidence that 514 individuals worked as store managers or assistant managers during the one-year statute of limitations and that they received 11,379 paychecks during that period.[52]  For each of the PAGA claims – failure to pay overtime,[53] failure to pay the minimum wage,[54] failure to provide meal and rest periods,[55] inaccurate wage statements,[56] and failure to timely pay wages[57] –

---

[46] *See id.* ¶ 6.

[47] *See* Docket No. 1 Ex. A ¶¶ 46

[48] *See* Docket No. 2 ¶ 7.

[49] *See id.* ¶ 8.

[50] *See id.*

[51] *See id.* ¶ 7.

[52] *See id.* ¶ 9.

[53] *See* Cal. Labor Code §§ 510, 1198.  Defendants rely on California Labor Code Section 558 to assume a $50 initial violation penalty for each violation and a total of $568,950 in controversy.

[54] *See id.* §§ 1194, 1197.  Defendants rely on California Labor Code Section 1197.1 to assume a $100 initial violation penalty per violation and a total of $1,137,900 in controversy.

[55] *See id.* §§ 226.7, 512(a).  Defendants rely on California Labor Code Section 2699(f) to assume a $100 initial violation penalty per violation and a total of $1,137,900 in controversy.

[56] *See id.* § 226.7 Defendants rely on California Labor Code Section 2699(f) to assume a $100 initial violation penalty per violation and a total of $1,137,900 in controversy.

10

Case No.: 13-368-PSG
ORDER DENYING PLAINTIFFS' MOTION TO REMAND

Defendants assume one violation per employee per pay period.  Defendants point to Plaintiffs allegations that Defendants had a "policy and/or practice" and "often" required Plaintiffs and putative class members to work through breaks and to work after clocking out.  Defendants estimate the PAGA claims are valued at $5,120,550.

### 2.    Analysis

Plaintiffs make several arguments regarding Defendants' calculations and the assumptions underlying their calculations.  First, Plaintiffs argue that Defendants' calculations for the waiting time penalties rely on impermissible estimates regarding the number of employees who qualify for the maximum statutory penalties.  Plaintiffs attack Defendants' overtime and meal and rest period claim calculations on the grounds that Defendants fail to provide sufficient evidence to support the assumption that class members were denied at least one meal or rest period per pay period or were not paid for one hour of overtime per pay period.  As to the PAGA claims, Plaintiffs argue first that Defendants have not provided sufficient evidence to support their violations estimates and second that only 25% of the PAGA claims should be considered in the amount in controversy estimate because PAGA requires that 75% of the recovery go to the California Labor & Workforce Development Agency ("LWDA").[58]

The court credits the evidence Defendants offer regarding the potential number of class members, both for the PAGA sub-class and for a possible sub-class of terminated employees potentially entitled to the waiting period claims.  The court also credits Defendants' evidence regarding the number of weeks the potential class members worked and the number of pay stubs given to the PAGA sub-class members as well as the average weekly wages for each of these classes.  The declarants providing these numbers are a Senior Vice President of Store Operations and a Director of Payroll Services for Claire's Boutiques, Inc., one of the defendants, and so they

---

[57] *See id.* § 204.  California Labor Code Section 210 provides for a $100 penalty per violation and a total of $1,137,900 in controversy.

[58] *See* Cal. Labor Code § 2699(l).

Case No.: 13-368-PSG
ORDER DENYING PLAINTIFFS' MOTION TO REMAND

1

2

appear to have the requisite knowledge to provide this information.[59]   Plaintiffs also do not appear

to dispute the validity of these numbers.

3

4

5

6

7

8

9

10

11

12

The issue then is whether Defendants' estimates of violations based on these numbers are

appropriate.  The court finds that Defendants' evidence and Plaintiffs' allegations support

Defendants' estimates for the overtime claims.  According to Defendants' declarant, store

managers and assistant store managers are "regularly scheduled to work eight (8) hour days" and

that assistant store managers are "regularly scheduled to work at least 30 hours per week."[60]  Given

Plaintiffs' allegations that Defendants systematically failed to pay overtime, this evidence

persuades the court that Defendants reasonably estimated that every class member failed to receive

an hour of overtime every pay period.  The court thus credits Defendants' overtime calculations of

$1,568,958.

13

14

15

16

17

18

19

20

The court finds that Defendants made reasonable estimates regarding the meal and rest

periods.  Based on Plaintiffs' allegations that class members "often" had to forego meal or rest

breaks because of Defendants' "policy and/or practice of failing to adequately staff their stores"

while also discouraging overtime and requiring that work be finished within the shift, the court

finds Defendants' estimates of one meal or rest break violation per week is an acceptable method to

calculate possible damages for these claims.[61]  The court credits Defendants' $1,045,000 for these

claims.

21

22

23

As to the waiting time claims, the court finds that Defendants' calculations are supported by

Plaintiffs' allegations and are a reasonable estimate of the potential value of the claims.  According

24

25

26

27

28

[59] *See* Docket No. 2; Docket No. 17 Ex. 1.

[60] *See* Docket No. 17 Ex. 1 ¶2.

[61] *See Jasso v. Money Mart Express, Inc.*, Case No. 11-CV-5500 YGR, 2012 WL 699465, at *5
(N.D. Cal. Mar. 1, 2012) (finding one meal and one rest break violation per employee per week
was a "reasonable and conservative estimate" based on similar allegations of a "uniform policy and
scheme").

Case No.: 13-368-PSG
ORDER DENYING PLAINTIFFS' MOTION TO REMAND

to the complaint, Defendants "regularly required Plaintiffs and class members to work off-the-clock" and "[t]o the extent that these off-the-clock hours did not qualify for overtime premium payment, Defendants did not even pay minimum wages for those hours worked off-the-clock."[62] Based on these allegations, Defendants reasonably estimated that each of the 454 class members potentially suffered at least one violation that continues to be unpaid, given Plaintiffs' allegations that Defendants failed to pay wages for work performed outside of the scheduled hours.  Although there is some question of when the 454 potential class members ended their employment with Defendants in light of the date of the removal from state court,[63] the court finds that Defendants did not unreasonably assume a 30-day violation penalty for each of the potential class members in light of Plaintiffs' allegations that Defendants never paid the class members for work performed outside of their assigned shifts.  The court thus finds that Defendants have shown that the amount in controversy from the waiting time claims more likely than not is at least $1,271,835.60.

The court also finds that Defendants' PAGA claim estimates are supported by reasonable assumptions.  As already noted, the court finds Defendants' estimates of violations for the overtime, meal and rest break, and waiting time claims are reasonable in light of the complaint. Defendants rely on the same estimates for their PAGA claims and in an apparent effort to be conservative they use only the initial violation penalty.  For at least the overtime, meal and rest break, and waiting time claims, the court finds Defendants have satisfied their obligation to show that it is more likely than not that the PAGA claims for those violations will be $2,844,750.[64]

---

[62] *See* Docket No. 1 Ex. A ¶ 50.

[63] The 454 potential class members include employees who ended their employment any time between December 2009 and January 15, 2013. *See* Docket No. 2 ¶ 7. Given that Defendants removed the action from state court on January 25, 2013, some of the 454 class members may not have suffered a full 30-day waiting time violation at the time of removal.  *See Singer v. State Farm Mut. Auto. Ins.*, 116 F.3d 373, 377 (9th Cir. 1997) (noting proper calculation of amount in controversy is at time of removal).

Case No.: 13-368-PSG
ORDER DENYING PLAINTIFFS' MOTION TO REMAND

The court finds unpersuasive Plaintiffs' argument that only 25% of PAGA recovery should be counted toward the amount-in-controversy requirement.  Although courts are split on whether the entire amount of PAGA recovery should be included,[65] rather than only the 25% that a representative plaintiff can expect to recover, the court finds the reasoning in *Urbino v. Orkin Services of California, Inc.*[66] and *Thomas v. Aetna Health of California*[67] persuasive.

In those cases, the district courts likened PAGA claims to derivative shareholder suits, in which a shareholder has no individual rights to recovery but rather seeks recovery on behalf of the corporation.  The courts reasoned that a PAGA representative likewise seeks recovery not based on a direct claim but rather to enforce the rights of the Labor and Workforce Development Agency ("LWDA").  Looking *Eagle v. American Telegraph & Telephone Co.*, in which the Ninth Circuit held that minority shareholders bringing a derivative action could aggregate their claims for purposes of the amount-in-controversy because they represented the common and undivided interest of the corporation who in fact owned the right to recovery,[68] the courts found that PAGA operates in a similar fashion.  The interest in collecting civil penalties for violations belongs to the LWDA who may decide not to pursue those remedies; the representative plaintiff steps in to the LWDA's shoes to prosecute the action only after the LWDA makes that decision.[69]

In contrast, in *Hernandez v. Towne Park*, the court reasoned that because either the LWDA or a representative plaintiff could bring the action, their interests were not "common and

---

[64] Given that with these estimates Defendants successfully exceed CAFA's amount-in-controversy threshold, the court does not consider whether Defendants met their burden for the rest of the PAGA claims.

[65] *See Hernandez v. Towne Park*, Case No. CV 12-02972 MMM (JCGx), 2012 WL 2373372, at *16 (C.D. Cal. June 22, 2012) (describing split and listing cases).

[66] 882 F. Supp. 2d 1152, 1163 (C.D. Cal. 2011).

[67] Case No. 1:10-cv-01906-AWI-SKO, 2011 WL 2173715, at *17-*18 (E.D. Cal. June 2, 2011).

[68] *See* 769 F.2d 541, 546-47 (9th Cir. 1985).

[69] *See* Cal. Labor Code § 2699.3.

14

Case No.: 13-368-PSG
ORDER DENYING PLAINTIFFS' MOTION TO REMAND

United States District Court
For the Northern District of California

undivided" and so the 25% recovery to the plaintiff could not be aggregated with the LWDA's

recovery.[70]  The court finds this reasoning unpersuasive.  Although it is true either the LWDA or

the plaintiff could pursue the action, the interest itself – enforcement of the Labor Code against

employers – is undivided.  That the recovery is split does not create a separate interest.  The PAGA

claims should be counted in full in the amount in controversy analysis.

### IV.    CONCLUSION

Given that the PAGA claims need not be split and that Defendants have shown by a

preponderance of evidence that Plaintiffs claims exceed CAFA's $5 million threshold, the court

DENIES Plaintiffs' motion to remand.

**IT IS SO ORDERED.**

Dated:  April 22, 2013

PAUL S. GREWAL
United States Magistrate Judge

---

[70] 2012 WL 2373372, at *16; *see also Pulera v. F&B, Inc.*, Case No. 2:08-cv-00275-MCE-DAD, 2008 WL 3863489, at *3-4 (E.D. Cal. Aug. 19, 2008).

15

Case No.: 13-368-PSG
ORDER DENYING PLAINTIFFS' MOTION TO REMAND